[Civ. No. 32023. Second Dist., Div. Five. Apr. 11, 1969.]

LESSER TOWERS, INC., Plaintiff and Respondent, v. ROSCOE-AJAX CONSTRUCTION CO., INC., Defendant and Appellant.

ROSCOE-AJAX CONSTRUCTION CO., INC., Plaintiff and Appellant, v. LESSER TOWERS, INC., Defendant and Respondent.

(Consolidated Cases.)

Beardsley, Hufstedler & Kemble, Charles E. Beardsley, Seth M. Hufstedler and Samuel L. Williams for Defendant and Appellant and Plaintiff and Appellant.

Charles J. Katz and Louis C. Hoyt for Plaintiff and Respondent and Defendant and Respondent.

AISO, J.—This case illustrates that unfortunately arbitration is not always a simple, expeditious, or inexpensive method of adjudicating commercial controversies.[1]

---

[1]The total elapsed time for the arbitration was 19 months, of which 202 days were consumed for hearings and three days for oral arguments. It took 25,000 pages of a reporter's transcript to record the oral proceedings; 1,500 exhibits were introduced. Over $400,000 in arbitration expenditures, exclusive of attorneys' fees, were incurred.

Roscoe-Ajax Construction Co., Inc., a Maryland corporation ("Roscoe-Ajax"), appeals from the judgment entered December 14, 1966, confirming an arbitration award in favor of the respondent Lesser Towers, Inc., a California corporation ("Lesser"), in two consolidated cases[2] and from the order of November 15, 1966, confirming the award and denying a motion to vacate the award.[3]

The judgment ordered, adjudged and decreed, inter alia, that: (1) the arbitrators' award be confirmed in all respects; (2) Lesser recover from Roscoe-Ajax $884,947, together with $25,795.92 interest, thus totalling $910,742.92; (3) the claims and counterclaims filed by Roscoe-Ajax against Lesser in the arbitration be dismissed and Roscoe-Ajax take nothing by reason thereof; (4) Roscoe-Ajax is not entitled to any liens on the property; (5) Roscoe-Ajax clear the property involved of all liens, outstanding or thereafter recorded, for work, labor, services, or materials furnished to Roscoe-Ajax; (6) (reserved an item for future arbitration, which does not concern us); and (7) Lesser recover $6,031.75 costs from Roscoe-Ajax.

## I.

On this appeal, Roscoe-Ajax contends that: (1) the arbitrators in deciding who terminated the contract and what damages flowed therefrom exceeded their powers because Roscoe-Ajax did not agree to arbitrate those issues, and (2) the award should be vacated because the arbitrators committed "gross errors." After having considered carefully the claimed errors, we conclude that the judgment confirming the award should be affirmed.

[2]On July 24, 1964, Lesser commenced action (proceeding) No. 842744 against Roscoe-Ajax to compel arbitration and to affirmatively enjoin Roscoe-Ajax from ceasing construction pending arbitration. On August 7, 1964, Roscoe-Ajax countered with its action No. 843501 for declaratory relief and injunction against the arbitration sought by Lesser in its case. The two actions were ordered consolidated for all proceedings by an order made on September 8, 1964.

[3]The appeal from the order of November 15, 1966, is dismissed as an appeal from an order no longer directly appealable. (*Hohn* v. *Hohn* (1964) 229 Cal.App.2d 336, 338 [40 Cal.Rptr. 125].) The word "order" as used in *Colvig* v. *RKO General, Inc.* (1965) 232 Cal.App.2d 56, 71 [42 Cal.Rptr. 473] and *Thriftimart, Inc.* v. *Superior Court* (1962) 202 Cal.App.2d 421, 424 [21 Cal.Rptr. 19], is apparently used in the sense of a judgment, judging from their citation of sections 1287.4 and 1294 of the Code of Civil Procedure. See also Code of Civil Procedure, section 1291. The order is reviewable, however, upon the appeal from the judgment of confirmation. (Code Civ. Proc., § 1294.2.)

## II.

Lesser, as owner, and Roscoe-Ajax, as contractor, entered into a written agreement on October 25, 1961, for the construction of a 20-story apartment in the Wilshire District of Los Angeles for a guaranteed maximum cost of $5,350,380. Roscoe-Ajax's fee was 5 percent of the cost. Should the actual cost exceed that guaranteed maximum, Roscoe-Ajax was to absorb the excess. However, for certain kinds of changes or delays attributable to Lesser, the maximum guaranteed cost was to be increased to compensate Roscoe-Ajax for increased costs resulting from such changes or delays. Plans and specifications were to be provided by Lesser through the architectural firm of Daniel, Mann, Johnson and Mendenhall. Roscoe-Ajax was to execute its work in conformity with the architect's drawings and instructions. It was to "do no work without proper drawings and instructions."

Roscoe-Ajax undertook to complete construction by "no later than 18 months following the notice to proceed," which it received on December 21, 1961. Barring intervening excusable delays, completion was scheduled for June 20, 1963.

Controversies arose between Lesser and Roscoe-Ajax shortly after construction was begun. Roscoe-Ajax claimed that Lesser decided upon making extensive changes in the lay-out of the kitchens and bathrooms, heating and air conditioning systems, fireproofing, cabinet work, fixtures, and electrical work. It claimed further that the architect did not provide proper specifications and drawings to enable it to proceed with the construction through its subcontractors. Lesser charged Roscoe-Ajax with refusal to sign change requests needed for obtaining necessary Federal Housing Administration approvals. Roscoe-Ajax contended that it was entitled to an increase in the guaranteed maximum cost because of the changes which necessitated long delays. Roscoe-Ajax also claimed that Lesser's stop order compelling it to cease application of fireproofing to the structural frame prevented completion of its work. At any rate the work came to a virtual standstill in April 1963.[4]

---

[4]On July 25, 1963, with construction in this virtually standstill condition, the City of Los Angeles issued its stop order halting all construction, after having discovered that certain concrete reinforcing steel installed by Bethlehem Steel Company, a subcontractor, was defective, and that other reinforcing steel had been misplaced. Lesser and Roscoe-Ajax executed an agreement on December 4, 1963, whereby Roscoe-Ajax agreed to complete all necessary remedial work to remove the city's stop

On July 20, 1964, Roscoe-Ajax walked off the job and refused to further perform under the construction agreement. It had up to that time completed less than 40 percent of its work contracted, but had demanded and received payment of $3,316,913.29, approximating 60 percent of the contract price.

Other relevant facts will be mentioned when they become pertinent to the discussion which follows.

### III.

Consideration of some of the arguments advanced by the parties necessitates a cognizance of the procedural steps, taken by the parties and the court below, which culminated in the arbitration award and its confirmation.

On June 19, 1964, Lesser by letter, invoking Article 39 of the General Conditions[5] of the contract, requested the architect to determine seven specific items of dispute. It read in part:

"We have a number of claims against [Roscoe-Ajax]. Said contractor, on the other hand, made certain claims against us.

"We desire to proceed to obtain, in accordance with Article 39, a determination of the following specific claims against the contractor:

" . . . . . . . . . . . . .

"6. The owner desires you to direct the Contractor to sign Change Request No. 19, dated June 4, 1964; Change Request No. 21, dated June 4, 1964; and Change Request No. 22, dated June 4, 1964. The Contractor has failed and refused to sign said Change Requests and has failed and refused to do the work contemplated thereof [sic].

"7. In addition to the foregoing claims, the owner calls upon the Architect to give an interpretation of the contract documents in the following particulars:

"The Contractor claims that Article 26 of the General Conditions of the contract for the construction of the building is ineffective and is not binding upon the Contractor because the Contractor claims said Article 26 to be in conflict with Article V of the contract itself. In this regard, the Contractor asserts

order, reserving for a separate arbitration the sole issue of liability for the cost of this remedial work. Remedial work was completed and the city's stop order lifted on February 10, 1965. We are not concerned with this dispute in this appeal.

[5]This provision, as well as other provisions of the contract necessary to this opinion, will be set forth in detail below.

that Article 26 of the General Conditions is inconsistent with Article V of the contract, and that therefore, says the Contractor, Article V must govern. The owner contends contrariwise; the owner contends that Article 26 of the General Conditions must be read together with Article V, and that, when read together, there is no inconsistency between the two.

"The owner desires your interpretation of the contracts in the regard set forth hereinabove."[6]

The refusal of Roscoe-Ajax to sign the change requests enumerated in paragraph 6 was an integral part of the dispute between the parties; approval of the contractor was needed before the changes could be submitted to the Federal Housing Administration for approval as required by Article IX of the Agreement. Change Request No. 19, related to revisions in the plastering and fireproofing for which Roscoe-Ajax was claiming an additional $310,659 under Article IV subdivision (4) of the Agreement.

Roscoe-Ajax refused to present any evidence or argument to the architect. It denied the architect's authority to render any decision. It informed Lesser that it considered Articles 26, 28, 39 and 40, among others, to be of no effect; that it did not consider itself required to follow the procedures outlined therein; and that it refused to arbitrate any disputes or controversies of the nature listed in Lesser's letter to the architect of June 19, 1964.

The architect rendered its decision on July 22, 1964. It ruled as to item 6 that the change requests had been reviewed, that they were ready for submission to the Federal Housing Administration, and that Roscoe-Ajax should sign them. As to claim No. 7, it ruled that Article 26 of the General Conditions and Article V of the Contract should be read together, and as so read, they were not inconsistent. Its interpretation, it added, was not intended as a legal interpretation and sug-

---

[6]The letter concluded: We have other claims against the contractor which we will be submitting to you for decision if they cannot be resolved with the contractor amicably. Those claims which are specifically enumerated in Paragraphs 1 through 7 hereinabove, however, are the most pressing claims at this particular time. Therefore, we would like to have those claims determined by you promptly. The determination of the foregoing specifically enumerated claims will be without prejudice to such other claims as exist and will hereafter be submitted to you for decision. [¶] Will you be good enough to communicate with the Contractor to whom we are sending a copy of this letter and fix a time when both we and the Contractor (if he elects to attend) may present our evidence in support of our aforementioned specific claims."

gested that the parties "consult their own respective lawyers concerning [the] decision" as to this issue.

On the same date of July 22, 1964, Lesser made its formal demand for arbitration, alleging in part: "Because of improper and defective construction, undue and improper delays in the performance of its obligations by Contractor, because of work stoppages caused by Contractor, because the Contractor unjustifiably ceased work upon the job on at least two occassions [*sic*] and has shut down the work, because the Contractor failed to properly follow plans and specifications, because the Contractor failed to furnish proper superintendence and supervision, because the Contractor has failed to remedy, or cause to be remedied, defects in the work and construction, and because the Contractor failed to complete said project and construction, Lesser has been caused to suffer great and irreparable damage."

The demand also set forth 14 specific claims:

1. "That because of the actions and conduct of Roscoe-Ajax and its failure to properly perform its obligations in connection with the construction and erection of the said building and project as required by the Contract of Oct. 25, 1961, and the Contract Documents, Roscoe-Ajax is liable to Lesser for all loss and damage occasioned thereby; and, that, in order to mitigate such damages and without terminating the Contract, that Lesser may, for the account of Roscoe-Ajax, proceed either itself, or by another general Contractor to cause said building to be constructed."

2. Lesser sought damages sustained from Roscoe-Ajax's unjustifiable cessation of work in May 1964.

3. Lesser sought damages due to Roscoe-Ajax's unjustified cessation of work in July 1964.

4. Lesser asked that the arbitrators affirm the findings and decisions of the architect, dated July 22, 1964.

(5 and 6 related to matters concerning the City of Los Angeles stop order of July 25, 1963, which do not concern us.)

7. Lesser sought damages resulting from Roscoe-Ajax's unjustified delay in performing its part of the contract.

8. Lesser sought damages flowing from Roscoe-Ajax's refusal to follow plans and specifications and for unauthorized deviations therefrom.

9. Lesser charged Roscoe-Ajax with failure to keep on the job a competent superintendent and assistants satisfactory to the architect.

(10 pertained to Roscoe-Ajax's claims for mechanics' liens, which do not concern us.)

11. Lesser requested that Roscoe-Ajax be ordered to satisfy and cause to be cancelled and released any mechanics' liens, then or thereafter of record, for any work, etc., furnished to Roscoe-Ajax or its subcontractors.

12. Lesser sought damages resulting from wrongful acts and neglect of Roscoe-Ajax ever since it commenced construction.

13. Lesser made an omnibus request for such other relief to which the arbitrators should find Lesser entitled.

14. Lesser asked that the cost and expense of the arbitration be assessed against Roscoe-Ajax.

On July 24, 1964, Lesser filed its proceeding (action) No. 842744 to compel arbitration of the 14 specific demands, to enjoin Roscoe-Ajax from ceasing construction pending arbitration, and to obtain a preliminary injunction.[7]

On August 7, 1964, Roscoe-Ajax countered with its action No. 843501, seeking a judicial declaration that Lesser had terminated the contract of October 25, 1961, an award of damages against Lesser for breach of contract, and an injunction against the arbitration which Lesser was seeking in action No. 842744. Roscoe-Ajax's request for a preliminary injunction was denied on August 12, 1964.

On August 18, 1964, Lesser demurred to Roscoe-Ajax's complaint in action No. 843501 and moved for an order to stay that action pending arbitration.

On August 20, 1964, the court in action No. 842744, ordered the parties to proceed to arbitration forthwith on all the items, except items 5, 6, and 10, listed on Lesser's demand for arbitration made on July 22, 1964. ''IT . . . FURTHER ORDERED that action number 843501 . . . now pending in [this] Court is abatable and does not stay this Proceeding which was filed . . . prior to the filing of the aforesaid action, and that arbitration expressly is a condition precedent to the aforesaid action. Under the provisions of Articles 38 and 39 of the General Conditions of the Contract herein, the Architect, in the first instance, and the Arbitrators, in the second

---

[7]On October 30, 1964, the court issued a preliminary affirmative injunction enjoining Roscoe-Ajax from ceasing or delaying work on the project pending arbitration. On November 4, 1964, Roscoe-Ajax filed its notice of appeal from this preliminary injunction, which automatically stayed its enforcement pending appeal. Later, by stipulation of the parties, this appeal was dismissed and this phase of the litigation was abandoned.

instance, are fully empowered to interpret the conditions of said Contract, (including the amendments thereto, and the General Conditions)."

On September 8, 1964, the court upon its own motion ordered the two actions 842744 and 843501 consolidated for all present and further proceedings. The court also sustained Lesser's demurrer to Roscoe-Ajax's complaint in No. 843501. It granted Roscoe-Ajax 20 days within which to amend its complaint: "[T]o put in issue the matters of declaratory relief involved in resolving the controversies of the parties as to the legal construction to be given to clause XI and General Conditions Section 22, as indicated in paragraph 5 above.[8] The court will entertain any such amendment so far as, excluding factual elements reserved to arbitration, it presents controversies as to the termination rights and duties under the contract (C.C.P. Section 1060) as a matter of law." It also ordered: "Upon filing of an acceptable amended pleading, . . . the Court upon proper application will make any appropriate orders to keep the arbitration, and declaratory relief, within proper bounds. . . ."

On September 28, 1964, Roscoe-Ajax filed its first amended complaint praying for declaratory relief in its first cause of action and for $250,000 damages in its second cause of action. It alleged in paragraph XIII of its second cause of action: "Roscoe-Ajax acquiesces in the submission of the factual issues in the dispute described above to arbitration. However,

---

[8]In the preamble to the order, the court had stated:

"5. Both parties contend that the contractor-owner relationship is ended, but for different reasons. [¶] Lesser Towers, Inc. contends the Roscoe-Ajax Construction Co. has breached the contract, that they can be replaced by the owner, and the loss, if any, in reletting the contract could be backcharged to Roscoe-Ajax Construction Co. Roscoe-Ajax contends that Lesser Towers, Inc., is completely at fault, that the contractor should be able to settle accounts and go on its way. [¶] But neither has been willing to cross the Rubicon; each pants and pauses and waits for the other to make an overt break. This is because under either contention, great sums are involved; and the provisions of Article XI (Par. II, second cause of action, complaint herein) and Section 22 of General Conditions are ambiguous as to the relationships involved. This article relates to termination by the Owner; the Owner here declares it has not acted under it; and that if the Contractor terminates, the arrangements for payment of Article XI do not apply, subjecting the contractor to the ordinary breach of contract liabilities. The contractor, however, asserts that the alleged breaches by Lesser Tower, Inc., constituted such termination, under existing facts, and that as provided in Par. XI 'the Owner shall further assume and become liable for all obligations, commitments and unliquidated claims' incurred by the Contractor in good faith, etc., receiving from the Contractor 'the legal assignment of its contractual rights.' "

the ultimate issues in said dispute, to-wit, material breach of a contract, failure of consideration, excuse for failure to perform, measure of damages, remedies available to the parties, are all legal issues which are not subject to arbitration, and can only be determined by a court of law. It is a proper exercise of jurisdiction by the court to reserve determination of said legal issues in this action at law while referring the underlying arbitrable issues of fact to the pending arbitration.''

On November 5, 1964, the court overruled Lesser's demurrer to the first cause of action of Roscoe-Ajax's amended complaint. The court, apparently on its own motion, ordered the second cause of action stricken ''on the ground that the matters therein are included solely in the arbitration proceeding and are not for this Court to determine.''

On November 23, 1964, arbitration was commenced before a board of arbitrators composed of the Honorable Kenneth C. Newell, a retired judge of the Superior Court of Los Angeles County, Herman Charles Light, F.A.I.A., and John A. Grine, a retired business executive formerly with the stock brokerage firm of Merrill, Lynch, Pierce, Fenner & Smith. Following 52 days of testimony, Lesser rested its presentation in chief on March 30, 1965. On Monday, April 5, 1965, Roscoe-Ajax served and filed its claim for $1,857,194.15 with the permission of the arbitrators acting under section 8 of the Commercial Arbitration Rules.[9] Roscoe-Ajax thereby sought a determination that the contract was terminated, pursuant to Article XI, and that Lesser was liable to pay the amounts due and owing under that article and that Lesser be compelled to assume and be liable for all the obligations, commitments, and unliquidated claims which Roscoe-Ajax had incurred in the project. In the alternative, it sought a determination of the damages payable to Roscoe-Ajax as the result of Lesser's wrongful acts.

Now, it was Lesser which objected to the arbitration of matters set forth in Roscoe-Ajax's claim or counterclaim. It applied to the court for an order to restrain the arbitrators

---

[9] ''Section 8. CHANGE OF CLAIM—After filing of the claim, if either party desires to make any new or different claim, such claim shall be made in writing and filed with the AAA, and a copy thereof shall be mailed to the other party who shall have a period of seven days from the date of such mailing within which to file an answer with the AAA. However, after the Arbitrator is appointed no new or different claim may be submitted to him except with his consent.''

from entertaining Roscoe-Ajax's demand that the arbitration include the claim or counterclaim. Lesser contended that Roscoe-Ajax had not submitted its claims first to the architect and that by its delay in filing its claim for nine months, Roscoe-Ajax was guilty of laches. On April 29, 1965, the court denied Lesser's request for a restraining order and ordered as follows:

"1. The Court determines, upon this hearing and upon the records and files in these consolidated actions, that except for the 'remedial work' still in progress, the parties now claim that the construction contract is at an end, but disagree as to the party terminating the same. The Board of Arbitrators is hereby authorized and directed to determine this issue, and to determine the damages, if any, flowing therefrom.

"2. The Court determines, upon this hearing and upon the records and files of these consolidated actions, that the Board of Arbitrators should be, and they hereby are, ordered to pass upon the claims and counterclaims asserted by Roscoe-Ajax Construction Co., Inc., subject to the condition precedent, when applicable, that such claims or counterclaims were presented to the architect as provided in Article 39 of the General Conditions; unless (1) such presentation and decision has been waived, or (2) such claims relate to the action or inaction of the architects themselves, or (3) under the facts and circumstances it should be determined that such submission would have been useless, or (4) the matter concerned related to any declaration respecting future legal liability (held excluded from the architect's powers by this Court in the Order dated September 8, 1964 (file 843501).

"3. That under the present posture of these matters, both parties have agreed to full arbitration; and are estopped to assert otherwise."

Arbitration proceedings were then resumed and carried on until July 8, 1966. On July 14, 1966, the board of arbitrators made extensive written findings and the award. Included in the findings are findings (2) and (3) that Roscoe-Ajax had terminated the contract by walking off the job on July 20, 1964, and that the contract was not terminated by Lesser. Several findings, (5), (6), and (7), as to damages were also made.

On August 16, 1966, Lesser filed its motion for an order confirming the award and directing entry of a judgment in conformity therewith.

At this juncture, Roscoe-Ajax filed a motion to vacate the award in the United States District Court, seeking removal to that court upon diversity of citizenship. Lesser moved the federal court for an order to remand the proceedings back to the state superior court. This latter motion was granted. The federal court held that the motion for removal was not timely. (*Lesser Towers, Inc.* v. *Roscoe-Ajax Constr. Co.* (S.D. Cal. 1966) 258 F.Supp. 1005.) The court further stated at page 1012: "The court concludes that whether the law of California is to be applied in the interpretation of the contract, including the California Arbitration Act [*Ross* v. *20th Century-Fox Film Corp.* (9 C.A. 1956) 236 F.2d 632, 634], or the Federal Law [*Robert Lawrence Company* v. *Devonshire Fabrics, Inc., supra,* [271 F.2d 402]], is for the determination of the California Court."

On November 15, 1966, the superior court ordered confirmation of the award and denied Roscoe-Ajax's motion to vacate it. Settled findings of fact, conclusions of law, and the judgment conforming to the order of confirmation were signed and filed on December 13, 1966.

## IV.

The composite construction agreement consisted of the agreement itself, A.I.A. General Conditions (1958 Edition) with modifications,[10] and plans and specifications when initialed. Pertinent parts of the agreement are set forth below:[11]

"ARTICLE IV. *Fee for Services*

" . . . . . . . . . . . .

" (4) If the scope of the work shall be changed . . . by a change in the basic structural design or character of the building as indicated by the original plans and specifications, or if changes in the work are made which, in the aggregate, substantially extend the time for completion of the work, the guaranteed cost shall be increased or decreased accordingly. The *amount of such increase or decrease* shall be mutually agreed upon by the Owner and the Contractor, or, failing

---

[10]The following provisions were deleted: Articles 16, 21, 24, 37, 30; 1st par. of Article 25; Article 15, except last par.; and Article 22, except the first sentence. The words "Article 29" were substituted for the word "contract" in the 2nd par. of Article 29.

[11]Although this unfortunately lengthens the opinion (which we dislike doing), knowledge of the contract provisions is essential to grasp the precise nature of the controversy between the parties. The italics in the contract provisions reproduced are ours.

such agreement, *shall be determined by arbitration in the manner provided for in the General Conditions.*

"(5) *If the Contractor is delayed in the prosecution of the work or the completion thereof by the act or neglect of the Owner or the Architect . . . , and if, as a direct result of such delay the total cost of the work is increased, then such additional cost directly so caused shall be added to the guaranteed cost.* If the Owner makes any change or changes as provided in Article IX hereof which increases or decreases the cost of the work, the guaranteed cost shall be increased or decreased accordingly. . . .

"(6) The work shall commence immediately upon the notice to proceed by the Owner with final completion no later than 18 months following the notice to proceed.

". . . . . . . . . . . . .

"ARTICLE V. *Payment to Contractor*

"(1) . . . *Promptly upon determination of the amount of increase,* (if any) *in the guaranteed cost,* Owner agrees to direct said Bank to set aside from the loan proceeds the amount of such increase in guaranteed cost, for payment to the Contractor in accordance with the provisions of this contract.

". . . . . . . . . . . . .

"ARTICLE IX. *Change in the Work*

"The Owner, through the Architect, may, from time to time, *by written instructions or drawings issued to the Contractor, make changes in the above mentioned drawings,* issue additional instructions, *require additional work or direct the omission of work previously ordered,* and the provisions of this Contract shall apply to all such changes, modifications and additions with the same effect as if they were embodied in the original drawings. *Changes in the work must also have approval of the Federal Housing Administration and the interim Lender. Any increase in cost of the work resulting from such changes shall correspondingly increase the guaranteed cost;* and any decreases in the cost of the work resulting from omissions ordered by the Owner and approved by the Federal Housing Administration and the Lender shall correspondingly decrease the guaranteed cost.

". . . . . . . . . . . . .

"ARTICLE XI. *Termination of Contract*

"If the owner should terminate the Contract under the first

sentence of Article 22 of the General Conditions of the Contract, the owner shall pay to the Contractor the total of (i) the balance of all payments under Article III to which the Contractor is entitled, (ii) an amount which will increase the payments on account of the fixed fee to an amount which bears the same ratio to the said fixed fee as the total cost of the work to the date of termination bears to the guaranteed cost, (iii) an amount equal to the balance of the fee, if any, and (iv) fair rental for any of the Contractor's tools, appliances and equipment retained by the Owner. . . .''

## GENERAL CONDITIONS

''ARTICLE 3 DETAIL DRAWINGS AND INSTRUCTIONS

''The Architect shall furnish with reasonable promptness, additional instructions by means of drawings or otherwise, necessary for the proper execution of the work. All such drawings and instructions shall be consistent with the Contract Documents, true developments thereof, and reasonably inferable therefrom.

''The work shall be executed in conformity therewith and the Contractor shall do no work without proper drawings and instructions.

''. . . . . . . . . . . . .

''ARTICLE 18 DELAYS AND EXTENSION OF TIME

''If the Contractor be delayed at any time in the progress of the work by any act or neglect of the Owner or the Architect, or of any employee of either, or by any separate Contractor employed by the owner, *or by changes ordered in the work* . . . , or by delay authorized by the Architect pending arbitration, or by any cause which the Architect shall decide to justify the delay, then the time of completion shall be extended for such reasonable time as the Architect may decide.

''No such extension shall be made for delay occurring more than seven days before claim therefor is made in writing to the Architect. In the case of a continuing cause of delay, only one claim is necessary.

''If no schedule or agreement stating the dates upon which drawings shall be furnished is made, then no claim for delay shall be allowed on account of failure to furnish drawings until two weeks after demand for such drawings and not then unless such claim be reasonable.

"This article does not exclude the recovery of damages for delay by either party under other provisions in the contract documents.

" . . . . . . . . . . . . .

"ARTICLE 22 OWNER'S RIGHT TO TERMINATE CONTRACT

"If the Contractor should be adjudged a bankrupt, . . . , or *if he should persistently or repeatedly refuse or should fail,* except in cases for which extension of time is provided, *to supply enough properly skilled workmen or proper materials,* or if he should fail to make prompt payment to subcontractors or for material or labor, . . . , *or otherwise be guilty of a substantial violation of any provision of the contract,* then the Owner, upon the certificate of the Architect that sufficient cause exists to justify such action, may, without prejudice to any other right or remedy and after giving the Contractor, and his surety if any, seven days' written notice, *terminate the employment of the Contractor and take possession of the premises and of all materials,* tools and appliances thereon and finish the work by whatever method he may deem expedient.

" . . . . . . . . . . . . .

"ARTICLE 26 PAYMENTS WITHHELD

"The Architect may withhold or, on account of subsequently discovered evidence, nullify the whole or a part of any certificate to such extent as may be necessary to protect the Owner from loss on account of:

" . . . . . . . . . . . . .

"d) A reasonable doubt that the contract can be completed for the balance then unpaid.

" . . . . . . . . . . . . .

"ARTICLE 31 DAMAGES

"Should *either party to this Contract suffer damages because of any wrongful act or neglect of the other party or of anyone employed by him,* claim shall be made in writing to the party liable within a reasonable time of the first observance of such damage and not later than the final payment, except as expressly stipulated otherwise in the case of faulty work or materials, and *shall be adjusted by agreement or arbitration.*

" . . . . . . . . . . . . .

"ARTICLE 38 ARCHITECT'S STATUS

"The Architect shall have general supervision and direction of the work. He is the agent of the Owner only to the extent provided in the Contract Documents and when in special instances he is authorized by the Owner so to act, and in such instances he shall, upon request, show the Contractor written authority. He has authority to stop the work whenever such stoppage may be necessary to insure the proper execution of the Contract.

"As the Architect is, in the first instance, the interpreter of the conditions of the Contract and the judge of its performance, he shall side neither with the Owner nor with the Contractor, but shall use his powers under the contract to enforce its faithful performance by both.

" . . . . . . . . . . . . .

"ARTICLE 39 ARCHITECT'S DECISIONS

"The Architect shall, within a reasonable time, make decisions on all claims of the Owner or Contractor and on all other matters relating to the execution and progress of the work or the interpretation of the Contract Documents.

"The Architect's decisions, in matters relating to artistic effect, shall be final, if within the terms of the Contract Documents.

"Except as above or as otherwise expressly provided in the Contract Documents, *all the Architect's decisions are subject to arbitration.*

"*If,* however, the *Architect fails to render a decision within ten days* after the parties have presented their evidence, *either party may then demand arbitration.* If the Architect renders a decision after arbitration proceedings have been initiated, such decision may be entered as evidence but shall not disturb or interrupt such proceedings except where such decision is acceptable to the parties concerned.

"ARTICLE 40 ARBITRATION

"All disputes, claims or questions subject to arbitration under this contract shall be submitted to arbitration in accordance with the provisions, then obtaining, of the Standard Form of Arbitration Procedure of The American Institute of Architects, and this agreement shall be specifically enforceable under the prevailing arbitration law, and judgment upon the award rendered may be entered in the court of the forum,

state or federal, having jurisdiction. It is mutually agreed that the decision of the arbitrators shall be a condition precedent to any right of legal action that either party may have against the other.

"The Contractor shall not cause a delay of the work during any arbitration proceedings, except by agreement with the Owner.

"Notice of the demand for arbitration of a dispute shall be filed in writing with the other party to the contract, and a copy filed with the Architect. The demand for arbitration shall be made within a reasonable time after the dispute has arisen; in no case, however, shall the demand be made later than the time of final payment, except as otherwise expressly stipulated in the contract.

"The arbitrators, if they deem that the case requires it, are authorized to award to the party whose contention is sustained, such sums as they or a majority of them shall deem proper to compensate him for the time and expense incident to the proceeding and, if the arbitration was demanded without reasonable cause, they may also award damages for delay. The arbitrators shall fix their own compensation, unless otherwise provided by agreement, and shall assess the costs and charges of the proceedings upon either or both parties.''

## V.

■ We first consider Lesser's contention that since Roscoe-Ajax did not, in opposing confirmation of the award in the superior court, assert non-submission of the questions of who terminated the contract and the damages resulting therefrom to arbitration, it is precluded from raising these issues for the first time on appeal. However, acts in excess of arbitrators' powers are reviewable under section 1286.2, subdivision (d) of the Code of Civil Procedure. We hold, therefore, that these issues, including Roscoe-Ajax's subsidiary contentions that the original order compelling arbitration was erroneous and that its later filing of a counterclaim does not preclude its attacking that order, are properly before us.

■ An order compelling arbitration is reviewable on an appeal from the judgment confirming an award. (Code Civ. Proc., §§ 1294, 1294.2; *Bertero* v. *Superior Court* (1963) 216 Cal.App.2d 213, 222 [30 Cal.Rptr. 719].) It is not true, as Roscoe-Ajax argues, that an appeal from the judgment is the exclusive remedy for testing the validity of an order compelling arbitration. If matters ordered arbitrated fall clearly

outside the scope of the arbitration agreement, or if the arbitration would appear to be unduly time-consuming or expensive, relief may be sought by writ of prohibition or mandate. (*Cook* v. *Superior Court* (1966) 240 Cal.App.2d 880, 884 [50 Cal.Rptr. 81]; *Bertero* v. *Superior Court* (1963) *supra*, 216 Cal.App.2d 213, 222; *Laufman* v. *Hall-Mack Co.* (1963) 215 Cal.App.2d 87, 90 [29 Cal.Rptr. 829, 94 A.L.R.2d 1068]; cf. *Weiman* v. *Superior Court* (1959) 51 Cal.2d 710 [336 P.2d 489].)

By its complaint in action No. 843501, Roscoe-Ajax sought, inter alia, an injunction against the arbitration. Its request for a preliminary injunction was denied by the court's order of August 12, 1964. This order was appealable. (Code Civ. Proc., § 904.1, subd. (f), formerly § 963, subd. 2.) Roscoe-Ajax did not appeal. In its amended complaint, it abandoned its pursuit of injunctive relief.

The fact that Roscoe-Ajax did not avail itself of either of these special remedies for testing the arbitrable scope of the construction agreement bears upon the validity of its assertion on appeal that its filing of a claim or a counterclaim was not of its own choosing but was solely a compelled interposition of a protective measure against an erroneous threshold order, since the only statutory method of obtaining review of that order was by an appeal from the judgment of confirmation. Nothing in the record, however, indicates that non-resort to these special remedies was due to inadvertence rather than to a studied choice on the part of Roscoe-Ajax's counsel in the superior court.[12]

### VI.

We now come to the gravamen of Roscoe-Ajax's contentions on appeal, to wit: that it did not agree to submit to arbitration the fundamental questions of who terminated the contract and what damages resulted therefrom, and therefore the arbitrators exceeded their powers in determining these matters. It contends that the original order for arbitration did not encompass these issues and that its filing of a counterclaim cannot be deemed to be an enlargement of the scope of the arbitration.

Roscoe-Ajax assails the order of August 20, 1964, ordering arbitration upon the ground that the trial judge bottomed it

---

[12] Roscoe-Ajax's appellate counsel were not its counsel in the superior court or before the arbitration board.

on Articles 39 and 40 of the General Conditions. It asserts that Article 39 did not empower the architect to decide strictly legal questions, such as whether Article V of the Agreement is inconsistent with Article 26 of the General Conditions. It supports its position by a dictum from *Gold Plastering Co., Inc.* v. *200 East End Ave. Corp.* (1953) 282 App.Div. 1073 [126 N.Y.S.2d 838, 840-841]: "[T]he dispute involved here, as to breach of contract, was not one which the parties had agreed, by incorporation of the 'General Conditions,' to submit to the architect for determination. In our opinion, the 'claims of the Owner or Contractor,' which the architect was authorized to determine under article 39 of the 'General Conditions,' must be construed in view of other provisions of those Conditions to refer only to claims 'relating to the execution and progress of the work,' and not to claims arising out of alleged breach of contract.''

Roscoe-Ajax also contends that Article 40 of the General Conditions is not a general agreement to arbitrate any and all disputes. (*A-1 Camp Chair Service Co., Inc.* v. *William L. Crow Constr. Co.* (1965) 24 App.Div.2d 623 [262 N.Y.S.2d 166, 168]; *G & N Constr. Co.* v. *Kirpatovsky* (Ct. of Appeal Fla. 1966) 181 So.2d 664, 666, 667.) Nevertheless, if a dispute or controversy falls within the purview of any other provision of the agreement providing for arbitration, arbitration may be ordered pursuant to Article 40. (*A-1 Camp Chair Service Co., Inc.* v. *William L. Crow Constr. Co., supra*; *Application of Dana Realty Corp.* (1964) 21 App.Div.2d 769 [250 N.Y.S.2d 784, 786]; *Thorgaard Plumbing & Heating Co.* v. *County of King* (1967) 71 Wn.2d 126 [426 P.2d 828, 834-835].)

█ In reviewing the validity of the order compelling arbitration, we are of the view that " 'it is a judicial action, and not judicial reasoning or argument, which is the subject of review' " (*Lincoln* v. *Superior Court* (1943) 22 Cal.2d 304, 315 [139 P.2d 13]). Technical precision is not required in submitting matters to arbitration. (*Lang* v. *Badger* (1958) 157 Cal.App.2d 345, 350-351 [320 P.2d 906].)

Roscoe-Ajax further assumes an ambivalent position that even if matters of legal interpretation are not within the architect's authority, all matters to be arbitrated must first be submitted to the architect under Article 39. █ Arbitration cannot be avoided because of non-compliance with pre-arbitration requirements if the failure is caused by the refusal of the party opposing arbitration to meet its contractual obli-

gations relating to such procedures. (*In re Newspaper Guild of Buffalo* v. *Tonawanda Publishing Corp.* (1964) 20 App. Div.2d 211 [245 N.Y.S.2d 832, 834].) Here Roscoe-Ajax initially refused to arbitrate at all. Moreover, under Roscoe-Ajax's view as to the limited scope of Article 39, a number of items listed in Lesser's demand for arbitration did not require a preliminary submission to the architect.

Assuming *arguendo* that Roscoe-Ajax's contention as to the scope of the architect's authority under Article 39 is correct and assuming further that some of the items set forth in Lesser's letter request of June 19, 1964, do not fall within the operative ambit of Article 39, we find no bar to the arbitration of disputes within the purview of Article IV of the Agreement relating to increases in the guaranteed maximum cost or of Article 31 of the General Conditions providing for arbitration of damages due to the wrongful act or neglect of the other party. Article V had a provision tied into Lesser's duty in the event an increase in the guaranteed maximum cost were determined. Article IV, subdivision (5) provided for the upward adjustment of the guaranteed cost if Roscoe-Ajax's work or its completion of the project were delayed by any act or neglect of the owner or architect or if the cost increased as the result of changes by the owner under Article IX. The owner had the right under Article IX to make changes, through the architect, in the original drawings, require additional work, or direct omission of work previously ordered. But Article IV, subdivision (4) provided that if the time required to complete the project were extended substantially because of changes in work, the guaranteed maximum cost was to be adjusted.

" ' [T]he burden is upon the one claiming error to support his contention.' " (*Griffith Co.* v. *San Diego College for Women* (1955) 45 Cal.2d 501, 516 [289 P.2d 476, 47 A.L.R.2d 1349] ; *Horn* v. *Gurewitz* (1968) 261 Cal.App.2d 255, 261 [67 Cal.Rptr. 791] ; see *Grunwald-Marx, Inc.* v. *Los Angeles Joint Board* (1959) 52 Cal.2d 568, 589 [343 P.2d 23].)

 If there is doubt as to whether an arbitration provision in an agreement covers a given controversy, it should be resolved in favor of coverage. (*O'Malley* v. *Wilshire Oil Co.* (1963) 59 Cal.2d 482, 487 [30 Cal.Rptr. 452, 381 P.2d 188] ; *Cook* v. *Superior Court* (1966) *supra,* 240 Cal.App.2d 880, 886; *Swift-Chaplin Productions, Inc.* v. *Love* (1963) 219 Cal. App.2d 110, 116 [32 Cal.Rptr. 758, 5 A.L.R.3d 1001].)

696

 *Morris* v. *Zuckerman* (1968) 69 Cal.2d 686 [72 Cal.Rptr. 880, 446 P.2d 1000] appears to have eliminated any distinction in the degree of strictness with which arbitration agreements in commercial contracts should be construed as against those in collective bargaining agreements. It stated at page 690: "[A]ny doubts as to the meaning or extent of an arbitration agreement are for the arbitrators and not the court to resolve."[13]

Courts no longer countenance wasteful litigation over such distinctions as between the "interpretation or meaning" of an agreement and its "performance." (*Frankel* v. *Standard Radio Corp.* (1966) 50 Misc.2d 492 [270 N.Y.S.2d 667, 670].)

 "The statutory procedure to compel arbitration by court order was designed to afford a remedy where the parties have not provided for the contingency that has arisen or where the contractual scheme has failed." (*Brink* v. *Allegro Builders, Inc.* (1962) 58 Cal.2d 577, 580 [25 Cal.Rptr. 556, 375 P.2d 436].)

It is significant that Roscoe-Ajax's counsel in the superior court agreed that legal controversies, which its appellate counsel contends were not submitted to arbitration, were arbitrable under Article IV, subdivision (4) of the Agreement.[14]

 Most of the items specified in Lesser's July 22, 1964, demand for arbitration were issues falling within the operative ambit of either or both Article IV, subdivision (4) of the Agreement or Article 31 of the General Conditions. As noted by the trial judge (see footnote 8, *supra*), both parties were in fact contending from the outset that the other party had terminated the contract. As shall be pointed out shortly, Roscoe-Ajax's counsel also represented that the matters

[13]The views expressed in *Morris* appear to be in accord with the trend in other jurisdictions as well. (See, e.g., *Layne-Minnesota Co.* v. *Regents of University of Minn.* (1963) 266 Minn. 284 [123 N.W.2d 371, 376-377]; *Matter of Exercycle Corp.* (*Maratta*) (1961) 9 N.Y.2d 329 [214 N.Y.S.2d 353, 355, 174 N.E.2d 463]; *Butler Products Co.* v. *Unistrut Corp.* (7 Cir. 1966) 367 F.2d 733; cf. *M. S. Kelliher Co.* v. *Town of Wakefield* (1964) 346 Mass. 645 [195 N.E.2d 330, 331-332].)

[14]In its points and authorities against Lesser's opposition to Roscoe-Ajax's filing its claim or counterclaim, Lesser's counsel argued: "The construction contract between Lesser and Roscoe-Ajax, specifically Articles 39 and 40 of the General Conditions and subparagraph (4) of Article IV of the Contract, provides for arbitration of all claims of the owner or contractor and of all other matters relating to the execution and progress of the work. . . . Roscoe-Ajax refused to arbitrate for the reason that it believed that the contract had been terminated and that the arbitration provision was no longer effective so far as the rights of the parties were concerned after such termination."

raised by its counterclaim were also affirmative defenses to Lesser's claims, which the arbitrators would have to determine in reaching their decision as to Lesser's claims against Roscoe-Ajax. The court stated in *Morris* v. *Zuckerman* (1968) *supra,* 69 Cal.2d 686, 690: ▇ "Section 1283.4 of the Code of Civil Procedure . . . provides: 'The award . . . shall include a determination of *all the questions submitted to the arbitrators the decision of which is necessary in order to determine the controversy.'* [Italics in original.]

"It is for the arbitrators to determine which issues were actually 'necessary' to the ultimate decision. [Citation.]'' (See also: *Carter, Moore & Co.* v. *Donahue* (1963) 345 Mass. 672 [189 N.E.2d 217, 220]; Domke on Commercial Arbitration (1968) § 34.02, pp. 314-315.)

▇ If it was necessary to determine who terminated the contract and what damages, if any, were caused thereby in making an ultimate decision upon Lesser's claims, it was within the power of the arbitrators to make the determinations. (*Grunwald-Marx, Inc.* v. *Los Angeles Joint Board* (1959) *supra,* 52 Cal.2d 568, 589-590; *Sapp* v. *Barenfeld* (1949) 34 Cal.2d 515, 522-523 [212 P.2d 233].)

Furthermore, in this case Roscoe-Ajax specifically requested the arbitrators to go into the two issues, which its appellate counsel disclaims having submitted to arbitration. In its "Claim of Roscoe-Ajax Construction Company, Inc., Against Lesser Towers, Inc.," dated April 5, 1965, in which it made a cross-demand for $1,857,194.15 to the arbitrators, it is stated in part:

"Lesser, by its acts, has terminated the Contract and is obligated to pay the amounts enumerated herein to Roscoe-Ajax pursuant to the provisions of the contract. . . . The Contractor was delayed in the prosecution and completion of the work by the acts and neglects of the Owner and its architect, . . . and by changed conditions. These delays increased the total cost of the work. Lesser materially breached the contract by refusing to increase the guaranteed cost in an amount necessary to pay these increased costs. Lesser also failed to timely or adequately deposit money into the construction loan account to cover these increased costs."

We do not find support in the record that the interposition of a counterclaim was compelled against Roscoe-Ajax's voli-

tion.[15] Rather, it was Roscoe-Ajax that was insisting that all disputes and controversies between the parties be settled in this particular arbitration proceeding. The superior court in its order of April 29, 1965, denying Lesser's motion concluded: "That under the present posture of these matters, both parties have agreed to full arbitration; and are estopped to assert otherwise."

We need not decide whether this was a finding or a conclusion of law, or whether estoppel in the strict sense existed. If the so-called fundamental issues of who terminated the contract and the damages resulting therefrom were not within the powers of the arbitrators to decide under the original arbitration order, any doubt was removed by Roscoe-Ajax seeking their adjudication by way of its counterclaim. In *O'Malley* v. *Petroleum Maintenance Co.* (1957) 48 Cal.2d 107, 110-111 [308 P.2d 9], the court held that if the parties submit

---

[15]Roscoe-Ajax contended in its points and authorities against Lesser's motion to restrain the arbitrators from permitting the filing of the counterclaim:

"It is not only obvious that the claims which have been raised by Roscoe-Ajax in the arbitration proceedings fall within the matters agreed to be arbitrated by the parties pursuant to the arbitration agreement contained in the construction contract but, in addition, this Court heretofore so ruled in these consolidated cases. . . .

"[T]he present three arbitrators have heard in excess of 50 days of testimony concerning the problems and controversies encountered by Roscoe-Ajax and Lesser relative to the construction of Lesser Towers and are eminently familar [*sic*] with the background and basis of Roscoe-Ajax's claims. Substantial prejudice would ensue to all parties if another arbitration panel were selected to litigate Roscoe-Ajax's claims in that a vast amount of additional time would be required to acquaint the arbitration panel with the multitude of factual data necessary to bring their level of knowledge of the case to that of the arbitrators sitting on the present panel. Consequently, if Roscow-Ajax [*sic*] is unable to litigate its claims before the present arbitrators, the costs of a subsequent arbitration will greatly exceed the costs which would be incurred in this arbitration before the existing panel if Roscoe-Ajax's claims are litigated before it. Also, this arbitration will not be shortened by granting Lesser's motion for these same issues will be raised as affirmative defenses by Roscoe-Ajax. . . .

"The arbitrators should and must determine in the pending arbitration *all* matters and controversies existing between Roscoe-Ajax and Lesser Towers. Roscoe-Ajax' affirmative defenses to Lesser Towers' claims will be presented to the arbitrators and there is no question but that Roscoe-Ajax may submit evidence in defense of Lesser's claims. The evidence to be presented in proof of these defenses is exactly the same as the evidence to be presented to prove the affirmative claims of Roscoe-Ajax, except for a relatively small amount of evidence on the amount of damages. . . . Justice and practicality demands that these arbitrators consider the claims of both Lesser and Roscoe-Ajax in order to fully determine the controversies between these parties. [Citing Code Civ. Proc., § 1283.4]."

an issue to the arbitrators, which is not covered by the original order of arbitration, they are bound by the decision of the arbitrators and may not relitigate the issue in another proceeding just because an adverse decision was suffered. While this *O'Malley* case involved arbitration of an additional issue by the mutual agreement of both parties, there is no reason why a similar result should not be reached as to a party who in the face of opposition requests that an additional issue or issues be arbitrated and on which he has had full opportunity of presenting his proof and of being heard before the arbitrators.

We hold that the arbitrators did not exceed their powers in determining who terminated the contract and what damages, if any, were caused thereby.

## VII.

Finally, Roscoe-Ajax contends that the award should be vacated because of gross errors committed by the arbitrators. Listed under this contention are the following: (a) federal substantive law instead of California law should have been applied; (b) manifest disregard of the law causing substantial injustice appears on the face of the award; (c) the arbitrators failed to decide issues necessary to the determination of the controversy; (d) the mechanics' lien portion of the award is indefinite; and (e) the arbitrators exceeded their powers.

▮▮▮ (a) In remanding Roscoe-Ajax's motion to vacate the award back to the superior court, the federal court ruled that it was for the state court to determine whether California or federal arbitration law should govern. (*Lesser Towers, Inc.* v. *Roscoe-Ajax Constr. Co.* (S.D. Cal. 1966) *supra,* 258 F.Supp. 1005, 1012.) The superior court found that the contract was to be performed in California, that at the time the parties entered into the agreement they intended California law and the "California Arbitration Act" to be applicable, and that by terms of the contract itself it was to be construed under and be governed by California law.[16] These findings were not based solely upon written documents but upon parol evidence as well. No challenge has been made that these findings are unsupported by the evidence. California law and not

[16]Article 1, subdivision (g) of the General Conditions provided: "The law of the place of building shall govern the construction of this Contract."

the federal law is applicable. (*Frey & Horgan Corp.* v. *Superior Court* (1936) 5 Cal.2d 401, 404 [55 P.2d 203].) Even if federal arbitration law would have been impliedly applicable absent the contract provision and the findings, here the parties agreed to be governed by California law. No authority has been presented which would bar Roscoe-Ajax from submitting to arbitration under California law by agreement. (Cf. *Lauritzen* v. *Larsen* (1953) 345 U.S. 571, 588-589 [97 L.Ed. 1254, 1270-1271, 73 S.Ct. 921]; *Sheerin* v. *Steele* (6 Cir. 1957) 240 F.2d 797, 799.)

In any event, Roscoe-Ajax has shown no prejudice from the application of California law. Grounds for vacating an award under the Federal Arbitration Act (9 U.S.C.A. § 10) are about the same as those set forth in section 1286.2 of the Code of Civil Procedure.[17]

(b) Relevancy of the dictum, "manifest disregard of the law" from *Wilko* v. *Swan* (1953) 346 U.S. 427, 436-437 [98 L.Ed. 168, 176-177, 74 S.Ct. 182] to this proceeding under California arbitration law is not made clear to us. The early California cases holding "gross errors of law appearing on the face of the award" reviewable (e.g., *Headley & Cozzens* v. *Reed* (1852) 2 Cal. 322, 325; *Muldrow* v. *Norris* (1852) 2 Cal. 74, 77-78 [56 Am.Dec. 313]; *Utah Constr. Co.* v. *Western Pac. Ry. Co.* (1916) 174 Cal. 156, 160-161 [162 P. 631]) were all decided prior to Title X of the Code of Civil Procedure (arbitration provisions). That they are no longer binding authority was explicated by then Presiding Justice Peters (now Justice of our State Supreme Court) in *Crofoot* v. *Blair Holdings Corp.* (1953) 119 Cal.App.2d 156, 184-185 [260 P.2d 156]. "It now is settled that 'in the absence of some limiting cause [*sic*] in the arbitration agreement, the merits of the

---

[17] 9 U.S.C.A. § 10 reads: "In either of the following cases the United States court in and for the district wherein the award was made may make an order vacating the award upon the application of any party to the arbitration—(a) Where the award was procured by corruption, fraud, or undue means. (b) Where there was evident partiality or corruption in the arbitrators, or either of them. (c) Where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced. (d) Where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made. (e) Where an award is vacated and the time within which the agreement required the award to be made has not expired the court may, in its discretion, direct a hearing by the arbitrators."

award, either on questions of fact or of law, may not be reviewed except as provided by statute.[18] [Citations.]" (*B.S.B. Constr. Co. v. Rex Constr. Co.* (1962) 200 Cal.App.2d 327, 334 [19 Cal.Rptr. 167]. Accord: *Interinsurance Exchange of Auto. Club* v. *Bailes* (1963) 219 Cal.App.2d 830, 834-835 [33 Cal.Rptr. 533] ; *Ulene* v. *Murray Millman of Cal., Inc.* (1959) 175 Cal.App.2d 655, 660-661 [346 P.2d 494] ; *Cecil* v. *Bank of America* (1956) 142 Cal.App.2d 249, 251 [298 P.2d 24].) The Supreme Court in *Morris* v. *Zuckerman* (1968) *supra*, 69 Cal.2d 686, 691 held: " 'Neither the merits of the controversy . . . nor the sufficiency of the evidence to support the arbitrator's award are matters for judicial review.' [Citation.] Although the court may vacate an award if it determines that ' [t]he arbitrators [have] exceeded their powers and the award cannot be corrected without affecting the merits of the decision upon the controversy is submitted' (Code Civ. Proc., § 1286.2, subd. (d)), it may not substitute its judgment for that of the arbitrators."

In reply to Roscoe-Ajax's contention that the arbitrators misapplied the law pertaining to contracts, it is appropriate to quote from *National Cash Register Co.* v. *Wilson* (1960) 8 N.Y.2d 377 [208 N.Y.S.2d 951, 955-956, 171 N.E.2d 302]. Rejecting the contention that an erroneous construction of a contract was an act exceeding the powers of the arbitrators or misconduct on their part, the Court of Appeals said: " [A]rbitrators may be said to have [exceeded their powers] only if they gave a completely irrational construction to the provisions in dispute. . . . The mere fact that a different construction could have been accorded the provisions concerned and a different conclusion reached does not mean that the arbitrators so misread those provisions as to empower a court to set aside the award. . . . [S]ince they acted within their powers and are not chargeable with such misconduct as is

---

[18]Code of Civil Procedure section 1286.2: "Subject to Section 1286.4 [specifying requirements for vacating an award], the court shall vacate the award if the court determines that: (a) The award was procured by corruption, fraud or other undue means; (b) There was corruption in any of the arbitrators; (c) The rights of such party were substantially prejudiced by misconduct of a neutral arbitrator; (d) The arbitrators exceeded their powers and the award cannot be corrected without affecting the merits of the decision upon the controversy submitted; or (e) The rights of such party were substantially prejudiced by the refusal of the arbitrators to postpone the hearing upon sufficient cause being shown therefor or by the refusal of the arbitrators to hear evidence material to the controversy or by other conduct of the arbitrators contrary to the provisions of this title."

specified in section 1462 of the Civil Practice Act, the award is unassailable and, disappointing though it may be to one of the parties, must be obeyed.''

(c) The contention that the arbitrators failed to decide issues necessary to the determination of the controversy is answered by the *Morris* case. ''It is for the arbitrators to determine which issues were actually 'necessary' to the ultimate decision.'' (*Morris* v. *Zuckerman* (1968) *supra,* 69 Cal.2d 686, 690.) To a plaint that arbitrators had not considered an item, Justice Traynor (now Chief Justice) replied in *Sapp* v. *Barenfeld* (1949) 34 Cal.2d 515, 523 [212 P.2d 233], by quoting from a Wisconsin case with approval: '' 'Even if the omission to find as to those items was due to a mistake on the part of the arbitrators, nevertheless the omission was in effect a disallowance of those items, which became final and conclusive when the award was made and proper notice thereof given to the interested parties.' ''

(d) At oral argument, counsel indicated that the contention that the award is indefinite and ambiguous in that part which deals with Roscoe-Ajax clearing the property of mechanics' liens is now moot.

(e) We find no merit to the contention that the arbitrators exceeded their powers because the portion ordering Roscoe-Ajax to clear the property of all mechanics' liens for work, labor, etc., furnished to it or any of its subcontractors might be construed to mean liens in connection with the remedial work performed to remove the city's stop order, which was expressly removed from the instant arbitration proceedings.

## VIII.

■ We conclude that the judgment confirming the arbitration award should be affirmed. The result we reach also comports with policy considerations behind court review of arbitration awards. '' 'There is a strong public policy in favor of arbitration, of settling arbitrations speedily and with a minimum of court interference and of making the awards of arbitrators final and conclusive.' '' (*Government Emp. Ins. Co.* v. *Brunner* (1961) 191 Cal.App.2d 334, 340-341 [12 Cal.Rptr. 547]; *United States Plywood Corp.* v. *Hudson Lbr. Co.* (1954) 124 Cal.App.2d 527, 530 [269 P.2d 93].) The very object of submitting matters to arbitration is to obviate or put an end to litigation. (*Boyd* v. *Bargagliotti* (1909) 12 Cal.App. 228, 238 [107 P. 150]; 5 Cal.Jur.2d (Rev.) Arbitration and Award, § 3, p. 62.)

The judgment is affirmed; the attempted appeal from the order confirming award and denying vacation thereof is dismissed.

Stephens, Acting P. J., and Reppy, J., concurred.

A petition for a rehearing was denied May 8, 1969, and appellant's petition for a hearing by the Supreme Court was denied June 25, 1969.