[L. A. No. 29586. In Bank. Nov. 26, 1968.]

B. R. MORRIS, Plaintiff and Appellant, v. E. K. ZUCKER-MAN, Defendant and Respondent.

Eddy S. Feldman for Plaintiff and Appellant.

Musick, Peeler & Garrett and Edward J. Riordan for Defendant and Respondent.

McCOMB, J.—Plaintiff appeals from a judgment denying his petition to vacate an arbitrators' award, as corrected, and confirming the award as requested by defendant.

*Facts*: On September 18, 1952, Mutual Housing Association, as "Seller," and Grandview Building Co., as "Buyer," entered into an agreement with respect to certain undeveloped real property in the Brentwood area of Los Angeles. By virtue of a written assignment in 1956, Mutual Withdrawees, Inc. (hereinafter referred to as "MWI") succeeded to the rights of Mutual Housing Association.

On January 2, 1963, in accordance with a plan for the dissolution of Grandview, that portion of the property which had not been developed pursuant to the 1952 agreement was conveyed to Grandview's sole shareholders, plaintiff and defendant, each receiving an undivided one-half interest. Each agreed to be personally bound by the 1952 agreement, and MWI consented in writing to the transfer on or about January 19, 1963.

Under the 1952 agreement, the "Seller" (then Mutual Housing Association, Inc., now MWI) retained certain interests in the property, including a security interest under a deed of trust and the right to receive a share of the proceeds on a sale of the property by Grandview.

The obligations of the "Buyer" (then Grandview, now plaintiff and defendant) under the 1952 agreement included the following: (1) To complete the subdivision improvements in "Tract 15905"; (2) to make engineering studies of the

property; (3) to subdivide and record not less than 12 lots during each calendar year after December 31, 1952; (4) to make installment payments of principal and interest on deeds of trust encumbering the property; and (5) to pay the "Seller" a proportionate share of all net sales proceeds received.[1]

Grandview fulfilled each of its obligations as "Buyer" under the 1952 agreement except the one referred to in (3) above. In no calendar year after December 31, 1954, did either Grandview or its successors (plaintiff and defendant) record 12 lots. The pertinent provision of the 1952 agreement provided that in the event of such a default, the "Seller" was authorized to "demand that Buyer put the remaining unrecorded property up for sale, and Buyer hereby agrees, upon receipt of such demand so to do at such prices as are determined by Seller."

By letter of November 24, 1959, MWI demanded, pursuant to the above clause, that Grandview "place all of the remaining unrecorded property on the market for sale at a total price of $1,640,000." Grandview by letter dated February 1, 1960, acknowledged receipt of the demand and indicated its compliance therewith.

On February 14, 1964, MWI entered into an agreement for the sale of the remaining unrecorded property to "Dayton Realty Co., a Corporation or nominee," for $1,700,000. Dayton Realty Co. is wholly owned by plaintiff and his wife and is controlled by plaintiff.

Although MWI was aware of defendant's rights under the 1952 agreement, it negotiated the proposed agreement with plaintiff alone and gave no notice of the transaction to defendant until February 18, 1964, at which time it demanded that both plaintiff and defendant execute the proposed agreement as successors in interest of Grandview.

On February 28, 1964, defendant communicated his willingness to sign the proposed agreement on the condition that

---

[1] The pertinent provisions reads: "To pay Seller amounts determined as follows:

"(1) Out of the sales proceeds Buyer shall first reimburse itself for development costs, as hereinafter defined;

"(2) Out of the sales proceeds in excess of the development costs, Buyer shall pay to Seller sums allocated as follows:

 (a) Out of the first Five Hundred Thousand Dollars ($500,000.00) of such excess, fifty per cent (50%) thereof;

 (b) Out of the next Three Hundred Thousand Dollars ($300,000.00) of such excess, thirty-three and one-third per cent (33⅓%) thereof;

 (c) Out of the remaining excess, twenty-five per cent (25%) thereof."

his right to participate as a ''buyer'' thereunder with plaintiff, acting through Dayton, be acknowledged. His offer, however, was rejected.

On or about March 5, 1964, MWI, Dayton, and plaintiff opened an escrow relating to the proposed sale to Dayton. By letter dated March 27, 1964, MWI again demanded that defendant sign the proposed agreement, together with escrow instructions which had been sent to him. Defendant refused to do so, and MWI thereupon demanded arbitration, pursuant to paragraph 21 of the 1952 agreement.[2]

After arbitrators had been duly selected, plaintiff, defendant, and MWI submitted the following controversy to them: ''Whether Mr. E. K. Zuckerman, as one of the successors to Grandview Building Co., is required under the terms and conditions of the agreement between Mutual Housing Association, Inc., and Grandview Building Co., dated September 18, 1952, to execute that certain proposed agreement of sale and set forth in a document dated February 14, 1964, entitled 'Agreement of Sale' and other documents necessary or convenient to carry out its terms.''

Extensive hearings were held, and, upon submission, briefs were presented on behalf of all the parties. Thereafter, the arbitrators made their award, which was, in pertinent part, to the following effect: (1) Defendant is required under the terms and conditions of the 1952 agreement to execute the proposed agreement of sale and other documents necessary or convenient to carry out its terms, on the following conditions: (a) That plaintiff, Dayton, and MWI modify the proposed agreement so as to provide for the sale of the subject property to defendant and Dayton as tenants in common, each as to an undivided one-half interest, and (b) that the distribution of proceeds of sale be computed according to the terms set forth in the 1952 agreement. (2) If the conditions set forth above

---

[2]Paragraph 21 reads: ''In the event a dispute arises between the parties hereto, each of them shall select one disinterested person and the two persons so selected shall select a third disinterested person, and the three persons so selected shall be designated as the 'arbitrators.' A decision by the majority of the arbitrators shall be binding and conclusive upon the disputants and either of them may take the necessary legal steps to have such determination given the force and effect of a judgment. The cost of arbitration shall be apportioned by the arbitrators to the disputants in any proportion which a majority of them deems just. If, for any reason, the arbitrators cannot be chosen in accordance with the above provisions, then the dispute or difference shall be arbitrated under the provisions of Part 3, Title X [sic] of the Code of Civil Procedure of the State of California.''

are not complied with, defendant is not required to execute the proposed agreement.

Plaintiff filed a petition in the superior court to vacate the award upon all the grounds specified by section 1286.2 of the Code of Civil Procedure[3] and for a rehearing before new arbitrators under section 1286.8, but principally upon the ground that the arbitrators had exceeded their powers. Defendant, Dayton, and MWI were named as respondents. After both a hearing and a rehearing, the superior court entered its order confirming the award and denying the petition to vacate the award.

 Question: *Did the arbitrators go beyond the scope of the submission agreement in making their determination?*

*No.* Plaintiff contends that the submission agreement called for a "yes" or "no" answer and that the arbitrators were not authorized to make their determination dependent upon conditions. Section 1283.4 of the Code of Civil Procedure, however, provides: "The award shall be in writing and signed by the arbitrators concurring therein. It shall include a determination of *all the questions submitted to the arbitrators the decision of which is necessary in order to determine the controversy.*" (Italics added.)

 It is for the arbitrators to determine which issues were actually "necessary" to the ultimate decision. (See *Grunwald-Marx, Inc.* v. *Los Angeles Joint Board,* 52 Cal.2d 568, 589-590 [343 P.2d 23].) Likewise, any doubts as to the meaning or extent of an arbitration agreement are for the arbitrators and not the court to resolve. (See *O'Malley* v. *Wilshire Oil Co.,* 59 Cal.2d 482, 490-491 [30 Cal.Rptr. 452, 381 P.2d 188] (collective bargaining agreement); *Morris* v. *Zuckerman,* 257 Cal.App.2d 91, 94-97 [64 Cal.Rptr. 714];

---

[3]Section 1286.2 of the Code of Civil Procedure provides: "Subject to Section 1286.4, the court shall vacate the award if the court determines that:

"(a) The award was procured by corruption, fraud or other undue means;

"(b) There was corruption in any of the arbitrators;

"(c) The rights of such party were substantially prejudiced by misconduct of a neutral arbitrator;

"(d) The arbitrators exceeded their powers and the award cannot be corrected without affecting the merits of the decision upon the controversy submitted; or

"(e) The rights of such party were substantially prejudiced by the refusal of the arbitrators to postpone the hearing upon sufficient cause being shown therefor or by the refusal of the arbitrators to hear evidence material to the controversy or by other conduct of the arbitrators contrary to the provisions of this title."

*Cook* v. *Superior Court,* 240 Cal.App.2d 880, 885-886 [50 Cal. Rptr. 81].)

It should be noted, also, that "Neither the merits of the controversy . . . nor the sufficiency of the evidence to support the arbitrator's award are matters for judicial review." (*Jordan* v. *Pacific Auto Ins. Co.,* 232 Cal.App.2d 127, 135 [7] [42 Cal.Rptr. 556].) Although the court may vacate an award if it determines that "[t]he arbitrators exceeded their powers and the award cannot be corrected without affecting the merits of the decision upon the controversy submitted" (Code Civ. Proc., § 1286.2, subd. (d)), it may not substitute its judgment for that of the arbitrators.

Arbitrators can apply both legal and equitable principles in deciding the ultimate issue submitted to them. (*Sapp* v. *Barenfeld,* 34 Cal.2d 515, 523 [12] [212 P.2d 233].) In the present case, it is clear that the fiduciary relationship between all the parties was the principal ground determining the arbitrators' award[4] and that such issue was actually submitted to them.

---

[4]The arbitrators filed with their award an opinion setting forth the facts and controlling principles on which the award was made. The salient points of the opinion are summarized below.

(1) The proposed agreement of sale to Dayton was actually a sale to plaintiff of property owned by plaintiff and defendant as cotenants, subject to the legal and equitable rights of plaintiff, defendant, and MWI under the 1952 agreement.

(2) Defendant cannot be required to convey his interest in the property to plaintiff's controlled corporation; even in foreclosure plaintiff would have acquired only an equitable lien on the interests of his cotenant.

(3) On February 14, 1964, plaintiff and defendant were bound to each other as fiduciaries with respect to the subject property, even though they had dissolved or liquidated their other joint venture or partnership affairs, and even though there had been strained relations, disputes, and quarrels concerning the business in which they were associated.

(4) As a cotenant with plaintiff, defendant was entitled to share equally the benefits and burdens of any contract entered into by plaintiff relating to the acquisition of any outstanding adversary claimed title or interest in the common property. Thus, plaintiff is precluded from buying in the entire interest in the subject property for his exclusive benefit, since this would completely undermine defendant's interest in the common title.

(5) Although MWI was fully aware of defendant's equitable and legal rights in the property, it gave defendant no opportunity to exercise these rights, in that (i) MWI negotiated the proposed agreement with plaintiff alone and without adequate notice thereof to defendant and (ii) MWI rejected defendant's offer to join as a vendee with plaintiff, though this was defendant's right under the law, and it endeavored to frustrate that right by dealing with plaintiff alone to the prejudice of defendant. By virtue of the 1952 agreement, MWI occupied a status akin to that of a fiduciary to both plaintiff and defendant, despite their default with regard to the subject property.

(6) Although the proposed agreement is reasonable in its terms and

In written "Contentions of Law and Fact," filed by MWI with the arbitrators at the commencement of the hearings and adopted by plaintiff, it is stated that the 1952 agreement was "essentially one of joint venture." It is also stated, ". . . MHA [Mutual Housing Association] contracted with Grandview in the form of Exhibit 1 [the agreement of September 18, 1952] to bail MHA out of its difficulties and to form a joint venture for an eventual recoupment of MHA's investment." Numerous other references are made to the fact that the parties regarded themselves as joint venturers.

Likewise, in MWI's "Contentions of Law and Fact," the contentions of MWI, and thus of plaintiff, are set forth, as follows: "1. Zuckerman must sign Exhibits 3 and 11 because the plain language of the contract gives him no discretion to do otherwise.

"2. A party to a contract is required to act reasonably and there is no reasonable grounds [sic] for Zuckerman withholding his signature.

"3. Zuckerman is quasi-estopped to say that the agreement should not be signed when he is taking the position that he is the buyer under the agreement."

---

fair as to price, it is nevertheless unfair and oppressive in its ultimate effect as to defendant, since (i) it forecloses him from participating therein, though this is his legal right and he signified his willingness to accept the benefits and burdens of the agreement in a timely manner, and (ii) it would require defendant to resort to expensive litigation to vindicate his right to participate with plaintiff in the transaction with MWI. Having chosen to deal with plaintiff with full knowledge of defendant's rights, MWI and plaintiff were precluded by their fiduciary status from acting in concert with each other but without affording defendant the opportunity to exercise his right as a partner or cotenant of plaintiff.

(7) To require defendant to sign the contract in its present form would effectuate a forfeiture of defendant's rights as a cotenant and a copartner unless he applied to a court of equity to sustain his rights. Such forfeitures are abhorrent to both law and equity, which also deplores circuity or multiplicity of actions.

(8) The "squeeze-out" technique, whereby one fiduciary attempts unfairly to eliminate his cofiduciary from further interest in the common enterprise, cannot receive the sanction of the courts.

(9) It would be against good conscience and equity to require defendant to sign the proposed agreement unless his rights to be a copurchaser with plaintiff are recognized.

(10) In accordance with section 1283.4 of the Code of Civil Procedure, the board makes its award in order to determine all the questions submitted to it "the decision of which is necessary to determine the controversy."

In a supplement to the opinion, rendered for purposes of clarification only, the arbitrators confirmed that the findings contained in their opinion (e.g., that plaintiff and defendant were joint venturers, that MWI occupied a status akin to a fiduciary, and that plaintiff and defendant were cotenants) pertained only to the subject matter of the 1952 agreement and to the property described therein.

The second contention set forth above required the arbitrators to analyze the terms and conditions of the proposed agreement with Dayton, as well as the escrow instructions, to determine the reasonableness and fairness of the proposed transaction as to defendant in light of the respective rights and duties of the parties under the 1952 agreement. This, of necessity, required the arbitrators to determine whether or not a fiduciary relationship existed between the parties by virtue of the 1952 agreement. Likewise, the third contention raised as an issue defendant's claim of a right to join with Dayton as the purchaser under the proposed contract, and the relationship between the parties was of importance in determining whether defendant had such a right.

Significantly, plaintiff himself at all times urged that the scope of authority of the arbitrators was all-encompassing for the purpose of deciding the case equitably. Counsel for plaintiff stated to the arbitrators in the conclusion of his reply brief filed with them: *"What can this Board do?* It can leave things as they are; order Zuckerman to sign and perform M-3 [the proposed sale agreement], or in the event of his non-obedience to the award, that the Clerk of the Court sign those documents necessary and convenient thereto on his behalf and that of his wife; *or the Board can so order with any conditions which it deems appropriate to safeguard the rights of all concerned."* (Italics added.)

It is apparent that the relationship between plaintiff and defendant at all times bore all the indicia of a joint venture. Likewise, even as to MWI and its relationship to plaintiff and defendant, some aspects of a joint venture relationship existed, in that the 1952 agreement was an overall transaction for land development by which MWI was to receive not merely payments on trust deed notes but proceeds or "profits" from ensuing sales, in accordance with a schedule of diminishing percentages of such proceeds or profits as sales were made over the years. The relationships were so viewed by all the parties. As indicated above, the issue was raised before the arbitrators, and the relevancy of evidence pertaining to the issue of "fiduciary relationship," as well as the issue of "division of proceeds," was considered by the arbitrators and ruled upon.[5]

It is clear that the instant case presents an attempt by

[5]With respect to the "division of proceeds" issue, it should be noted that plaintiff's counsel exhibited to the arbitrators a chart purporting to show how the sales proceeds would be distributed.

plaintiff and MWI to "freeze out" defendant. It was readily apparent to the arbitrators that the 1952 agreement contemplated a sale of the property on the market—an arm's length third party sale, and not a sale from one to another of the three joint venturers. The conditions which they attached to the award, namely, that defendant be included in the proposed sale agreement and that the distribution of the proceeds of the sale be computed according to the terms of the agreement of September 18, 1952, were in recognition of that purpose.

To hold that the arbitrators were without power to consider the nature of the 1964 contract, its relation to the 1952 contract, and whether it would result, if executed, in the perpetration of a fraud or in the taking of an unfair advantage by plaintiff over defendant, would be a limited and unwarranted interpretation of the submission agreement.

The controversy submitted clearly involved the enforcement of the 1952 agreement, which spelled out the relationship of the parties to each other, and the parties advised the arbitrators that their contentions involved the issue of their relationships. They submitted evidence on such issues and argued for their adjudication. None of them may now be heard to say that the arbitrators exceeded their authority in deciding those issues.

The judgment is affirmed.

Traynor, C. J., Peters, J., Tobriner, J., Mosk, J., Burke, J., and Sullivan, J., concurred.

Appellant's petition for a rehearing was denied December 24, 1968.