[No. B031656. Second Dist., Div. Two. Jan. 17, 1991.]

LARRY FERGUSON, Plaintiff and Appellant, v.
WRITERS GUILD OF AMERICA, WEST, INC., Defendant and
Respondent.

**COUNSEL**

Kaye, Scholer, Fierman, Hays & Handler, Pierce O'Donnell, Clara Amanda Pope, Rosen & Broidy, Richard A. Rosen and Jay Statman for Plaintiff and Appellant.

Horvitz & Levy, David M. Axelrad and Loren Homer Kraus for Defendant and Respondent.

Rachel D. Young as Amicus Curiae on behalf of Defendant and Respondent.

**OPINION**

**KLEIN (B.), J.[*]—**

### I.

Larry Ferguson appeals from a judgment of the superior court denying his petition for a writ of mandate directed to respondent Writers Guild of America, west, Inc.

Ferguson, a screenwriter, was engaged by Paramount Pictures Corporation to write a screenplay for a feature-length theatrical motion picture entitled "Beverly Hills Cop II." When the picture was completed, the Writers Guild, on April 27, 1987, determined the writing credits for the

---

[*] Assigned by the Chairperson of the Judicial Council.

picture as follows: Screenplay by Larry Ferguson and Warren Skaaren; Story by Eddie Murphy & Robert D. Wachs.

Ferguson then commenced this proceeding by filing a petition for writ of mandate in the superior court on May 15, 1987. In his petition he asked the court to issue a peremptory writ of mandate requiring the Writers Guild to set aside its credit determination and make a new determination giving Ferguson sole screenplay credit and sole story credit. The superior court denied Ferguson's petition and entered judgment November 20, 1987. It denied Ferguson's motion for reconsideration on December 22, 1987. This appeal followed.

The appeal had been pending nearly three years when, three days before oral argument, Ferguson filed a request to dismiss the appeal. At oral argument he has informed us his dispute with the Writers Guild remains unresolved. For this reason, and because the record shows the issues are both substantial and recurring, we will deny the request to dismiss.

## II.

The process for determining writing credits for theatrical motion picture scripts is governed in this case by two documents. The first is the 369-page theatrical and television basic agreement, reached in 1985 by 241 producing companies, represented by the Alliance of Motion Picture and Television Producers, Inc.; 3 television networks; Writers Guild of America, west, Inc.; and Writers Guild of America, east, Inc. The second document is the Writers Guild west's 11-page credits manual, dated December 31, 1980.

The basic agreement contains, in a section entitled theatrical schedule A, detailed provisions concerning writing credits for feature-length theatrical photoplays. Under schedule A, the production company must notify all participating writers of its tentative credits determination. Any of the writers may then file with the production company and the Writers Guild a written request for arbitration of credits. If such a request is filed, the Writers Guild, through its arbitration committee, must determine the credits within 18 business days. If the studio, in its good faith judgment, declares an emergency requiring an earlier decision, this deadline is reduced to 10 business days. In the event the Writers Guild's arbitration committee has not rendered its decision by this deadline, or by an extended deadline set by the production company, the production company may declare the tentative credits final.

Schedule A authorizes the Writers Guild's arbitration committee, prior to rendering its decision, to "make such investigations and conduct such

hearings as may seem advisable to it." The credits manual, discussed below, sets forth the procedures the Writers Guild has adopted.

Schedule A defines "screenplay" as "the final script (as represented on the screen) with individual scenes and full dialogue, together with such prior treatment, basic adaptation, continuity, scenario, dialogue, and added dialogue as shall be used in and represent substantial contributions to the final script." It defines "story" as "all writing representing a contribution distinct from screenplay and consisting of basic narrative, idea, theme or outline indicating character development and action."

Schedule A contains a provision dealing with the finality of the Writers Guild's arbitration committee credits determination:

"The decision of the Guild arbitration committee, and any Board of Review established by the Guild in connection therewith, with respect to writing credits, insofar as it is rendered within the limitations of this Schedule A, shall be final, and the Company will accept and follow the designation of screen credits contained in such decision and all writers shall be bound thereby.

"The decision of the Guild arbitration committee may be published in such media as the Guild may determine. No writer or Company shall be entitled to collect damages or shall be entitled to injunctive relief as a result of any decision of the Committee with regard to credits. In signing any contract incorporating by reference or otherwise all or part of this Basic Agreement, any writer or Company specifically waives all rights or claims against the Guild and/or its arbiters or any of them under the laws of libel or slander or otherwise with regard to proceedings before the Guild arbitration committee and any full and fair publication of the findings and/or decisions of such committee. The Guild and any writer signing any contract incorporating by reference or otherwise or referring to this Schedule A, and any writer consenting to the procedure set forth in this Schedule A, shall not have any rights or claims of any nature against any Company growing out of or concerning any action of the Guild or its arbiters or any of them, or any determination of credits in the manner provided in this Schedule A, and all such rights or claims are hereby specifically waived."

The Writers Guild's credits manual repeats the quoted provisions verbatim. It also sets forth the procedure for the Writers Guild's credit arbitrations and its substantive standards for recognizing credits.

The procedure can be summarized as follows. The credit arbitration is administered by the Writers Guild's credit arbitration secretary. When a

credit arbitration is requested, this officer sends the parties to the arbitration a screen arbiters list, containing the names of all potential arbitrators. These are Writers Guild members with credit arbitration experience or with at least three screenplay credits of their own. This list comprised at least 400 names in 1987. Each party can peremptorily disqualify a reasonable number of persons from the list. From the remaining potential arbitrators, the secretary selects three, endeavoring to select individuals experienced in the type of writing involved in the particular case.

The secretary delivers to the three arbitrators all script, outline, and story material prepared or used in the creation of the screenplay, together with source material (writings upon which the screenplay or story is based). These documents are supplied to the Writers Guild by the production company, and each participant in the credit arbitration may examine them to assure the inclusion of everything he or she has written. Any dispute over the "authenticity, identification, sequence, authorship or completeness" of literary material to be included is resolved by a special three-member committee, which conducts for that purpose a prearbitration hearing, at which all affected writers may present testimony and other evidence.

The arbitrators also receive the production company's statement of tentative credits; a copy of the credits manual; and the statements of the parties, which are confidential. The secretary designates a member of the Writers Guild's screen writers' credits committee to act as consultant to the arbitrators on procedure, precedent, policies, and rules, and to aid the arbitrators toward a majority decision.

The three arbitrators hold no hearing, and they deliberate independently of each other. Indeed, each remains unaware of the identity of the other two (unless, after they reach their decisions, the consultant convenes a meeting with the three). Each arbitrator notifies the secretary of his or her determination. The secretary then informs the parties of the decision of the majority of the arbitrators.

Within 24 hours thereafter, any party may request the convening of a policy review board, consisting of three members of the Writers Guild's credits committee, including that committee's chairman or vice-chairman. The policy review board does not examine the script, story, or source materials; indeed, its members are forbidden to read these. Its function is solely to detect any substantial deviation from the policy of the Writers Guild or from the procedure set forth in the credits manual. The policy review board has authority to direct the arbitration committee to reconsider the case or to order a fresh arbitration by a new triumvirate. The policy review board is not empowered to reverse the decision of an arbitration

committee in matters of judgment. A decision of the policy review board approving a credit determination is final.

## III.

With his petition, Ferguson furnished the superior court with all screenplay and story materials, so the court could make the proper credit decisions under Writers Guild standards. Thus, to determine the correct story credit, the court was invited to ascertain which writings represented "a contribution distinct from screenplay and consisting of basic narrative, idea, theme or outline indicating character development and action." With respect to screenplay credit, the court was requested to determine which writer or writers contributed more than 33 percent of "the final script (as represented on the screen) with individual scenes and full dialogue, together with such prior treatment, basic adaptation, continuity, scenario, dialogue, and added dialogue as shall be used in and represent substantial contributions to the final script." On this appeal, Ferguson asks us to undertake the same task, then to command the Writers Guild to award him sole screenplay credit and sole story credit for the picture.

Ferguson contends, in the alternative, that the Writers Guild's credit determination process was infected by procedural improprieties and irregularities, and asks us to order the Writers Guild to conduct the credit arbitration anew. The asserted procedural defects are these: (1) the credit arbitration secretary improperly cast herself in the role of consultant to the arbitration committee and had improper substantive communications with the three arbitrators; (2) Ferguson was unfairly denied a postponement of the arbitration to assemble additional story materials and prepare his confidential statement for the arbitrators; (3) the arbitrators were given insufficient time to review the materials Ferguson submitted; (4) the Writers Guild took no steps to ensure the three arbitrators were disinterested and unbiased; (5) the arbitrators were not provided with copies of schedule A or the credits manual; (6) the Writers Guild incorrectly treated as story material a memorandum in which Paramount executive David Kirkpatrick recounted a story idea told him orally by Murphy and Wachs; and (7) the Writers Guild improperly denied Ferguson's request that the arbitrators be given a second memorandum in which Paramount executive Michael Roberts remarked that Paramount "threw out" the screenplay drafted by the writers it had previously engaged and hired Ferguson "to write an entirely new draft."

Ferguson presents a final contention, challenging as error the rulings of the superior court denying his requests (a) to take the deposition of Warren Skaaren, the writer awarded shared screenplay credit, and (b) to compel the

Writers Guild to reveal the identity of the three arbitrators, presumably so Ferguson could take their depositions.

## IV.

■ Before ruling on these contentions, we must consider the proper scope of judicial review of the Writers Guild's credit determination in this case. We agree with the Writers Guild's position that under schedule A and the credits manual, disputes over writing credits for feature-length photoplays are nonjusticiable. As judges we are no doubt as capable as any lay person of studying screenplays, outlines, and other literary material to assess the relative contributions of the participating writers. The membership of the Writers Guild, however, have agreed among themselves (by approving the credits manual) and with the producers' association (by entering into schedule A of the basic agreement) that this delicate task is to be performed by arbitration committees composed of experienced Writers Guild members. The professional writers who constitute the Writers Guild have thus decided—quite appropriately, we think—that the credit-determination process can be handled both more skillfully, more expeditiously, and more economically by Writers Guild arbitration committees than by courts. The finality provisions of schedule A and the credits manual, quoted earlier, demonstrate the Writers Guild membership's intention that credit disputes be resolved without resort to ruinously expensive litigation. The scope of judicial review in a particular case, then, is limited to a determination whether there has been a material breach of the terms of the credits manual, which binds the Writers Guild as well as its members.

This limited scope of review is similar to that employed in judicial review of more traditional arbitrations. There the court does not review the merits of the arbitrators' award; it examines only whether the parties in fact agreed to submit their controversy to arbitration, whether the procedures employed deprived the objecting party of a fair opportunity to be heard, and whether the arbitrators exceeded their powers. (See Code Civ. Proc., §§ 1286-1286.8; *Morris* v. *Zuckerman* (1968) 69 Cal.2d 686, 691 [72 Cal.Rptr. 880, 446 P.2d 1000]; *Felner* v. *Meritplan Ins. Co.* (1970) 6 Cal.App.3d 540, 545 [86 Cal.Rptr. 178].)

## V.

■ In examining Ferguson's claims of procedural irregularities, we bear in mind that the procedures employed in the present arbitration have already been reviewed for correctness by the Writers Guild's own policy review board. The court accords considerable deference to the decision of

the policy review board, because of its members' expertise in the interpretation and application of schedule A and the credits manual.

█ In addition, the familiar principle of exhaustion of administrative remedies prevents a litigant from pursuing a judicial remedy for procedural defects without having first asked the private organization to correct them. (See *Westlake Community Hosp.* v. *Superior Court* (1976) 17 Cal.3d 465, 474-477 [131 Cal.Rptr. 90, 551 P.2d 410].)

Here, after the parties were informed of the arbitration committee's credits determination, Ferguson requested review by a policy review board. This body convened on April 27, 1987. The record contains no information about what presentation Ferguson's attorney, Diane L. Becker, made to the policy review board at that time. It contains only a letter Becker sent the Writers Guild a few hours earlier, stating, "Larry Ferguson has requested . . . that a Policy Review Board be convened . . . on the basis that there was a misinterpretation, misapplication and/or violation of Guild Policy in the following particulars." There followed two particulars only: first, that Murphy and Wachs were disqualified from story credit under a credits manual provision with respect to writing credit for production executives, and second, that Skaaren's contribution to the screenplay represented substantially less than the 33 percent minimum required by the credits manual for screenplay credit.

█ Accordingly, we hold that Ferguson has not preserved for judicial review the seven contentions listed on page 1388, *ante*, because he has not demonstrated that he presented them to the Writers Guild's policy review board.

Even were we to reach the merits of Ferguson's seven claims, we would find them devoid of merit. Judicial review of the Writers Guild's credits determination is restricted to considering whether the party challenging the determination has demonstrated a material and prejudicial departure from the procedures specified in the credits manual. Applying this standard, we have determined that the record sustains none of Ferguson's seven procedural contentions.

█ Ferguson's remaining grievance is that he should have been told the names of the arbitrators and permitted to interrogate them and Skaaren. We reject this position.

Skaaren was a party to the credit arbitration, and could have made any concessions he deemed appropriate in that forum; otherwise, as the trial court correctly determined, Skaaren's appraisal of his and Ferguson's

relative contributions could add nothing to Ferguson's claim to sole story and screenplay credit.

With respect to the identity of the arbitrators, the credits manual unequivocally specifies that the three arbitrators are not to be informed of each other's identities, and the Writers Guild has sufficiently established that, though not also stated in the credits manual, its unvarying and well-known rule has long been that the identities of the arbitrators are also not disclosed to the parties to the arbitration or to anyone else inside or outside the Writers Guild. The Writers Guild's insistence on this practice is supported by important and legitimate considerations, including the necessity that arbitrators be entirely freed from both real and perceived dangers of pressure, retaliation, and litigation. (Cf. *Board of Trustees* v. *Superior Court* (1981) 119 Cal.App.3d 516, 527 [174 Cal.Rptr. 160] [university faculty peer evaluations received under a guaranty of confidentiality are not discoverable]; Evid. Code, § 1157 [proceedings of hospital care evaluation committees are not discoverable].) While it is unusual to have an arbitration procedure in which the parties cannot appear in person before the arbitrators and cannot learn the arbitrators' identities, discovery of the names of the arbitrators in a Writers Guild credit arbitration could serve no legitimate function. Ferguson apparently wishes to ask the arbitrators, inter alia, to explain and justify their conclusions regarding the various writers' contributions to the final screenplay. Even when an arbitration is conducted under more familiar rules, though, such as the commercial arbitration rules of the American Arbitration Association, the losing party is not permitted to conduct an inquisition into the arbitrators' thought processes in reaching their award. (*Cobler* v. *Stanley, Barber, Southard, Brown & Associates* (1990) 217 Cal.App.3d 518, 528-529 [265 Cal.Rptr. 868]; see Evid. Code, § 703.5.)

Appellant's request to dismiss the appeal is denied, and the judgment is affirmed.

Gates, Acting P. J., and Fukuto, J., concurred.