Filed 11/9/23  Neal Electric Corp. v. Clark Construction Group CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| NEAL ELECTRIC CORPORATION, | D082217 |
| Plaintiff and Appellant, | |
| v. | (Super. Ct. No. PSC1805941) |
| CLARK CONSTRUCTION GROUP - CA, L.P., | ORDER MODIFYING OPINION AND DENYING REHEARING |
| Defendant and Respondent. | NO CHANGE IN JUDGMENT |

THE COURT:

It is ordered that the opinion filed herein on October 17, 2023, be modified as follows:

1. On page 14, lines 8-10, the citation beginning "See Code Civ. Proc." is deleted and replaced with the following citation:

   See Code Civ. Proc., § 1292, subd. (a) [a petition to enforce an agreement to arbitrate may be filed in a "county where the agreement is to be performed"].

There is no change in the judgment.

The petition for rehearing is denied.

BUCHANAN, Acting P. J.

Copies to:  All parties

Filed 10/17/23  Neal Electric Corp. v. Clark Construction Group CA4/1 (unmodified opinion)

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA


| | |
|---|---|
| NEAL ELECTRIC CORPORATION, | D082217 |
| Plaintiff and Appellant, | |
| v. | (Super. Ct. No. PSC1805941) |
| CLARK CONSTRUCTION GROUP - CA, L.P., | |
| Defendant and Respondent. | |


APPEAL from a judgment of the Superior Court of County of Riverside, Ronald L. Johnson (Retired judge of the San Diego Super. Ct. assigned by the Chief Justice pursuant to art. VI, § 6 of the Cal. Const.) and Randolph Rogers, Judges.  Affirmed.

Procopio, Cory, Hargreaves & Savitch, Kendra J. Hall and Jeff S. Hood for Plaintiff and Appellant.

Pillsbury Winthrop Shaw Pittman, Elaine Y. Lee, John R. Heisse, Daniel H. Bromberg, and Deborah B. Baum for Defendant and Respondent.

Neal Electric Corporation, a subcontractor, appeals from a judgment enforcing an arbitration award in its dispute with general contractor Clark Construction Group.  Neal petitioned the court to vacate the award on the

ground that it exceeded its authority by holding a virtual hearing, unfairly refused to postpone the hearing, and failed to issue a complete and final award. On appeal, Neal again argues that the arbitration panel exceeded its authority in holding a virtual hearing and in refusing to issue a complete and final award. We are unpersuaded by Neal's claims of error and affirm the judgment.

## FACTUAL AND PROCEDURAL BACKGROUND

A.     *Background Information*

1.     *Neal and Clark's Subcontract Agreement*

This dispute arises out of the construction of the East County Detention Center (Project) located in Indio, California. Clark contracted with the Project owner, County of Riverside (County), to serve as the general contractor for the Project. In May 2015, Clark entered into a Subcontract Agreement (Subcontract) with Neal to perform electrical work on the Project.

The Subcontract includes several provisions concerning the settlement of disputes, including an arbitration clause. For any disputes not settled pursuant to the Subcontract's procedures, the Subcontract provides:

> To the extent not resolved under Article 11.b above, any dispute between Clark and Subcontractor shall, at Clark's sole option, be decided by arbitration in accordance with the Construction Industry Arbitration Rules of the American Arbitration Association. If Clark elects to arbitrate, then the arbitration shall be in Riverside, CA.

From the start of the Project, Clark and its subcontractors encountered numerous problems with the plans provided by the Project's architect, HOK Group, Inc. (HOK). As a result, Clark and its subcontractors submitted thousands of inquiries, which severely delayed their work and increased their costs.

2

## 2. *Termination of Subcontract*

In 2018, Clark demanded that Neal increase its workforce to complete the existing work. When Neal refused to do so, Clark terminated the Subcontract. Neal sued Clark for wrongful termination and Clark successfully petitioned the court to compel arbitration per the terms of the Subcontract. In November 2018, Clark filed an arbitration demand with the American Arbitration Association to recover the cost of completing and correcting Neal's work. In response, Neal reasserted its breach of contract claim against Clark.

## B. *Arbitration Proceeding*

### 1. *Scheduling Orders*

In August 2019, the arbitration panel chair issued a scheduling order, which required the parties to file detailed statements of claims and defenses. The order further stated that, after service of these statements, "no party may further amend its claims or defenses (other than changes in monetary amounts allowed by Rule R-6) without leave of the Arbitrator." It set the evidentiary hearing schedule "at a location to be determined" and further provided that "[t]estimony will be presented in person absent extraordinary circumstances."

In December 2019, the panel chair issued a second scheduling order noting that the parties had served their detailed statements of claims and defenses. The order stated that no amendments beyond those dealing with monetary amounts would be allowed without leave of the panel chair. It confirmed the evidentiary hearing dates and protocol and reiterated that "[t]estimony will be presented in person absent extraordinary circumstances." It also set an August 2020 deadline for counsel to meet and confer and notify the panel of the proposed location for the evidentiary hearing.

2. *Virtual Hearing*

In light of the COVID-19 pandemic, which began in early 2020, the panel advised the parties that they would be required to follow a detailed protocol if the hearings were to proceed in person. During a telephonic status conference in August 2020, the panel advised the parties that "it was now likely to require that the hearings be conducted virtually—i.e., by videoconference—in light of the continuing risks posed by the pandemic." Neal prepared a written objection to proceeding virtually and requested a six-month continuance. Neal's objection stated:

> The Subcontract provides that the arbitration shall be conducted in Riverside, California and the parties have not agreed to change the location of the hearing. The Subcontract does not contemplate, nor does Neal agree to, an entirely virtual arbitration proceeding.

Neal argued that an in-person hearing was "imperative" due to "the scope and complexity of the dispute and amount of evidence that will be presented." Neal asserted that "[a] virtual proceeding introduces a host of issues that will substantially impact the proceeding and result in prejudice," including "internet connectivity issues," distractions, and difficulties presenting exhibits and examining witnesses. It also argued that a continuance was needed because "critical authorized discovery remains pending," as two-thirds of the parties had not produced subpoenaed documents, and Neal was facing objections from third parties regarding three deposition subpoenas.

Neal acknowledged that it was "not possible to secure a facility that can guarantee accommodations that would meet the needs of the hearing due to governmental restrictions currently being imposed as a result of the COVID-

4

19 pandemic."  Neal's objection stated that it would consider a virtual hearing if a continuance was granted:

> If, after a reasonable continuance and after obtaining the necessary discovery at issue, it remains infeasible to proceed in-person, Neal will re-evaluate proceeding virtually.  Neal simply wants a reasonable opportunity to proceed in person as contemplated by the parties.  Neal proposes the scheduling of a new hearing date be deferred to January 2021 and, based upon the level of restriction at such time, and status of the discovery disputes, a reasonable hearing date can be scheduled.

Clark opposed Neal's request, arguing that the panel had authority to order a virtual hearing.  Clark also argued that any prejudice caused by a virtual hearing would be borne equally by both parties.  Clark also acknowledged that "no one expected that we would be in the middle of a pandemic, and that everyone would prefer an in-person hearing where witnesses could testify at a normal distance, without masks, and all attendees could come and go as they please."

The panel denied Neal's request for a continuance.  The panel reasoned that "the risks created by an in-person hearing, especially one such as this matter involving three [p]anelists, a large number of counsel, witnesses and experts, as well as a court reporter and possible technical support staff to assist in the presentation of exhibits, outweigh any potential prejudice to the parties, which in any event is imposed equally on both sides."  (Fn. omitted.)  The panel's ruling on the request for a continuance stated the American Arbitrators Association and the National Academy of Arbitrators had concluded that, "in exceptional circumstances such as the current pandemic, arbitrators have the authority to order that a matter proceed by way of video hearing over the objection of a party to the arbitration."  The panel also ruled that any prejudice to Neal's ability to complete its third-party discovery was

outweighed by the prejudice to both parties of a lengthy continuance, particularly as Neal had failed to pursue third party discovery in a timely manner. The panel also agreed to make additional hearing days available if needed to evaluate third party documents obtained during the hearings.

3.     *Hearing and Arbitration Award*

The hearing commenced in late November 2020 and was conducted virtually using the Zoom platform. Twenty witnesses testified over 20 days and more than 680 exhibits were introduced into evidence. The panel chair commended the parties for "hav[ing] done a yoeman's job in presenting what is a difficult and complex case."

Following the issuance of an interim award, the panel issued a 77-page award in August 2021 granting Clark a net recovery of approximately $9.67 million. The panel determined that Clark was justified in terminating Neal. It concluded, "Neal defaulted when it refused Clark's demands to increase its manpower when there was work available for it to perform, and in fact unreasonably reduced manpower." It therefore held Clark properly terminated Neal and was entitled to damages.

The panel considered Neal's claims to damages arising from design deficiencies and discrepancies.[1] The panel noted that Clark's accounting included a credit to Neal of $1.07 million as its share of the money the County paid Clark in its settlement of these claims. The panel also noted

---

[1]     These claims to damages were initially addressed in $41 million worth of claims brought by Clark against the County, including $2.75 million for Neal's losses. Clark and the County ultimately settled these claims for $20 million. As part of that settlement, the County agreed to sue HOK using Clark's financial and substantive assistance. At the time of the hearing, the County's lawsuit against HOK was pending and Clark was to receive 75% of any proceeds from that suit (after payment of attorneys' fees).

that Clark acknowledged that Neal was entitled to a share of any additional amounts recovered in the County's suit against HOK. As a result, Neal was "entitled to a credit in an unknown amount against the amount awarded in this matter, or payment by Clark if the award has been satisfied, if Clark receives proceeds from the lawsuit against HOK arising out of damages suffered by Clark's subcontractors, including Neal."

The panel, however, was unable to calculate Neal's potential recovery from the County's litigation against HOK because "the amount of any future recovery by Clark is unknown, and the specific claims asserted in the lawsuit against HOK were not explored during the hearing of this matter." The panel declined "to hold this proceeding in abeyance or retain jurisdiction" in the event of any future dispute over distribution of the proceeds of the County's lawsuit against HOK. It noted that the parties were free to file a new arbitration demand if such a dispute arises and could "reappoint the members of the [p]anel to hear that matter."

C.    *Trial Court Proceeding*

Neal petitioned the trial court to vacate the award on the grounds that the panel exceeded its authority by holding the hearing virtually and failing to fully resolve the dispute, and unfairly refusing to postpone the hearing. The court denied the petition.

The court ruled that the panel did not exceed its authority by conducting a virtual evidentiary hearing. The court observed that, when the parties agreed to the arbitration provision in the Subcontract, "the impact of the pandemic on holding in-person proceedings was not on the horizon." In addition, the Subcontract did not require in-person hearings simply because it states the arbitration "shall be in Riverside, CA."

7

The court also ruled that the panel did not fail to issue a final award by declining to issue Neal a credit for the pending litigation between Clark and HOK. To the contrary, the court observed, all the "issues framed by [Neal's] Complaint" were "fully resolved by the [p]anel in its final award." The fact that Neal may be entitled to funds ultimately received by Clark from the litigation between Clark and HOK "does not change the fact that all of the issues in this case have been resolved."

The court also ruled that Neal was not substantially prejudiced by the panel's refusal to postpone the evidentiary hearing. The court found the panel's denial of the continuance was reasonable, that they would have needed a virtual hearing even if it had been continued to January 2021, and that both parties equally felt any prejudice from a virtual hearing.

## DISCUSSION

On appeal, as it did in the proceedings before the trial court, Neal contends that the arbitration panel's award should be set aside because the panel exceeded its authority by (1) holding the hearing virtually and (2) failing to issue a complete and final award .[2] We consider these contentions after setting forth general principles guiding our *de novo* review. (*Advanced Micro Devices, Inc. v. Intel Corp.* (1994) 9 Cal.4th 362, 376, fn. 9 (*Advanced Micro Devices*).)

A.    *Relevant Legal Principles*

Through the California Arbitration Act (§ 1280 et seq.), the Legislature has expressed a " 'strong public policy in favor of arbitration as a speedy and relatively inexpensive means of dispute resolution.' " (*Moncharsh v. Heily &*

_____

[2]    Neal did not appeal the court's ruling that it was not substantially prejudiced by the panel's refusal to postpone the evidentiary hearing.

8

*Blase* (1992) 3 Cal.4th 1, 9.)  "To promote this alternative means of dispute resolution, the law minimizes judicial intervention in the proceedings, in part, by the doctrine of arbitral finality."  (*Jones v. Humanscale Corp.* (2005) 130 Cal.App.4th 401, 407.)

As our Supreme Court has admonished, "arbitration judgments are subject to extremely narrow judicial review" (*Marsch v. Williams* (1994) 23 Cal.App.4th 238, 243), and while acting in excess of authority is a recognized ground for vacating an arbitration award (Code Civ. Proc., § 1286.2, subd. (a)(4)), this ground is "narrowly construed."  (*Emerald Aero, LLC v. Kaplan* (2017) 9 Cal.App.5th 1125, 1138.)  Parties to an arbitration agreement "have bargained for the relatively free exercise" of the arbitrator's "flexibility, creativity and sense of fairness" in choosing a remedy.  (*Advanced Micro Devices*, *supra*, 9 Cal.4th at p. 374.)

B.      *Panel's Authority to Order Virtual Hearing*

Neal contends that the panel exceeded its authority by ordering a virtual evidentiary hearing.  We disagree.

To successfully dispute the panel's interpretation of its authority under the Subcontract's arbitration provision, Neal faces a high bar.  Indeed, the panel's award will not be overturned "as long as the [panel] is even arguably . . . acting within the scope of [its] authority."  (*Advanced Micro Devices*, *supra*, 9 Cal.4th at p. 378.)  Here, we conclude that the panel was acting within the scope of its authority when it decided to proceed with a virtual evidentiary hearing.  (*Gueyffier v. Ann Summers, Ltd.* (2008) 43 Cal.4th 1179, 1182 (*Gueyffier*) ["Absent an express and unambiguous limitation in the contract . . . , an arbitrator has the authority to . . . interpret the contract, and award any relief rationally related to his . . . contractual interpretation."].)

9

According to Neal, the Subcontract required the panel to hold an in-person proceeding in Riverside. But there is no "express and unambiguous limitation in the [Subcontract]" (*Gueyffier*, *supra,* 43 Cal.4th at p. 1182) that limits how arbitration proceedings are to be conducted, including whether they are to be held in-person or online. On the contrary, the Subcontract merely provides that "the arbitration shall be in Riverside, CA." The only guidance regarding whether the hearing was to take place in-person or virtually, is provided by the construction industry rules of the American Arbitration Association, which are explicitly incorporated into the Subcontract. The Subcontract states: "[A]ny dispute between Clark and Subcontractor shall, at Clark's sole option, be decided by arbitration in accordance with the Construction Industry Arbitration Rules of the American Arbitration Association."

The construction industry arbitration rules specifically allow for the virtual presentation of evidence.[3] Those rules give arbitrators "discretion . . . [to] conduct the proceedings with a view toward expediting the resolution of the dispute." (Rule R-33(b), Construction Industry AAA rules.) "When deemed appropriate," the rules specifically provide that arbitrators may conduct proceedings that "allow for the presentation of evidence by alternative means including video conferencing, internet communication, telephonic conferences and means other than an in-person presentation." (*Id.*, Rule R-33(c).) The only limitation imposed on such proceedings is that they "must still afford a full opportunity for all parties to present any evidence that the arbitrator deems material and relevant to the resolution of the dispute and when involving witnesses, provide an opportunity for cross-

[3]     As noted, the Subcontract expressly incorporates the American Arbitration Association's construction industry arbitration rules. The full, up-to-date text of those rules is available on the American Arbitration Association's website at <https://www.adr.org/construction> [as of October 17, 2023], archived at <https://perma.cc/G5HL-NVZS>. Having given the parties appropriate notice before oral argument that we proposed to take judicial notice of the rules on our own motion (Evid. Code, § 459, subds. (c) & (d)), we now do take judicial notice of the Construction Industry Arbitration Rules of the American Arbitration Association (hereinafter Construction Industry AAA rules), amended and effective July 1, 2015. (See Evid. Code, § 452, subd. (h) [permitting judicial notice of "[f]acts and propositions that are not reasonably subject to dispute and are capable of immediate and accurate determination by resort to sources of reasonably indisputable accuracy"]; *Boghos v. Certain Underwriters at Lloyd's of London* (2005) 36 Cal.4th 495, 505, fn. 6 (*Boghos*) [noticing American Arbitration Association's commercial arbitration rules]; *Cooper v. Lavely & Singer Professional Corp.* (2014) 230 Cal.App.4th 1, 6, fn. 1 (*Cooper*) [noticing rules of Judicial Arbitration and Mediation Services, Inc].)

examination." (*Ibid.*) There is no contention here that the panel failed to provide a full opportunity to present evidence or cross-examine witnesses.

Neal contends that the arbitration provision "cannot be interpreted as permitting a virtual proceeding with the parties not in the same physical location as identified in the agreement." It asserts that the specification that "the arbitration shall be in Riverside" is "restrictive" and implicitly eliminated the panel's authority to conduct virtual hearings. Contrary to Neal's argument, we conclude it was not unreasonable for the panel to interpret the provision, in conjunction with the adopted construction industry arbitration rules, as authorizing a virtual proceeding, particularly when faced with an ongoing pandemic that made it "impossible" to hold an in-person hearing in Riverside. The panel explained that Neal "was unable to locate *any* venue in Riverside County that could accommodate the number of people likely to attend the hearings and still comply with Riverside County's restrictions and the [p]anel's protocol." The panel determined that it was "impossible to hold an in-person hearing" as scheduled, and that "a continuance of the currently-scheduled hearings would push the start of the hearings out nearly one year."

Neal acknowledges that construction industry arbitration rules allow "the presentation of certain evidence . . . by alternate means," but argues that those rules do not provide the panel "authority for an entire proceeding to be presented virtually." Although Neal makes a sensible distinction, the panel rationally determined that the pandemic made it "impossible to hold an in-person hearing" and that "conducting the hearing via videoconference is a reasonable alternative to an in-person hearing in light of the Covid-19 pandemic, stay-at-home orders, and travel limitations." Neal even acknowledges that "an accommodation [for virtual testimony] may be made

12

for certain witnesses." Under the extraordinary situation of the pandemic where in-person meetings were prohibited, the panel reasonably concluded that all witnesses, as well as other participants, needed an accommodation to appear virtually.

Both parties and the panel cite to a National Academy of Arbitrators advisory opinion issued during the pandemic stating that an arbitrator "may order that a matter proceed by way of video hearing in whole or in part without mutual consent and over the objection of a party."[4] In support of its decision to conduct a virtual hearing in the face of the pandemic, the panel pointed to the advisory opinion's statement that " '[g]overnment travel restrictions and family health considerations of counsel or witnesses may [ ] weigh in the arbitrator's decision to order or not order a video hearing.' " Neal correctly contends that the advisory opinion "is not law and cannot displace the specific limitations contained in the parties' arbitration agreement" or other rules and laws governing the arbitration. Nevertheless, the panel was not incorrect or irrational to use it as guidance. (*Advanced Micro Devices*, *supra*, 9 Cal.4th at pp. 374–375 [arbitrators "are not bound to award on principles of dry law, but may decide on principles of equity and good conscience"].)

Moreover, the distinction between the conduct of an arbitration and the location of an arbitration further supports the panel's reasonable

---

[4] The advisory opinion is available on the National Academy of Arbitrators website at <https://naarb.org/advisory-opinions/> [as of October 17, 2023], archived at https://perma.cc/4BC7-XDJK>. Having given the parties appropriate notice before oral argument that we proposed to take judicial notice of it (Evid. Code, § 459, subds. (c) & (d)), we now do so. (See Evid. Code, § 452, subd. (h); *Boghos, supra*, 36 Cal.4th at p. 505, fn. 6; *Cooper, supra*, 230 Cal.App.4th at p. 6, fn. 1.)

13

interpretation of its authority. As discussed above, the construction industry arbitration rules set out the "Conduct of Proceedings," which allows evidence to be presented by video conference. (Rule R-33(c), Construction Industry AAA rules.) The rules address the arbitration location in a separate section, "Fixing of Locale," which provides that the parties may determine the locale of the arbitration and sets forth how to resolve disputes concerning the locale. (*Id.*, Rule R-12.) The California Arbitration Act provides that the location of the arbitration determines its judicial seat. (See Code Civ. Proc., § 1292, subd. (b) [a petition to enforce an agreement to arbitrate may be filed in "a county where the agreement is to be performed"].) Consistent with this distinction, it was reasonable for the panel to find that the Subcontract's identification of an arbitration location did not impliedly eliminate its authority to conduct virtual evidentiary hearings, as set out explicitly in the construction industry arbitration rules.

Indeed, if the parties sought to require the arbitrator to hold all proceedings in-person, they would have made that a material term of the Subcontract. They did not, and instead the agreement explicitly adopts the construction industry arbitration rules, which allow evidence to be presented virtually. Because the parties did not "explicitly and unambiguously limit[ ] [the panel's] powers" (*Gueyffier, supra,* 43 Cal.4th at p. 1185) to conduct hearings virtually, we are unable to say that the court erred in confirming the award and rejecting Neal's interpretation of the Subcontract. (*Morris v. Zuckerman* (1968) 69 Cal.2d 686, 690 ["[A]ny doubts as to the meaning or extent of an arbitration agreement are for the arbitrators and not the court to resolve."].) Accordingly, we must "refrain from substituting" our own judgment or Neal's judgment "for the arbitrator's in determining the contractual scope of [its] powers." (*Advanced Micro Devices*, *supra*, 9 Cal.4th

at p. 372.) Requiring the parties to proceed virtually did not "constitute misconduct [n]or [was it] so profound as to render the process unfair." (*Heimlich v. Shivji* (2019) 7 Cal.5th 350, 368.)

C.  *Complete and Final Award*

Neal also argues the panel exceeded its authority by failing to issue a complete and final award. Specifically, Neal contends that the panel should have resolved its entitlement to offsets arising from the County's lawsuit against HOK. Instead of resolving the issue, according to Neal, the panel left it "open" to be decided in "future, protracted litigation." We disagree that the panel failed to resolve an issue or exceeded its authority.

Code of Civil Procedure section 1283.4 provides that the award "shall include a determination of all the questions submitted to the arbitrators the decision of which is necessary in order to determine the controversy." "[I]t is for the arbitrators to determine what issues are 'necessary' to the ultimate decision." (*Advanced Micro Devices*, *supra*, 9 Cal.4th at p. 372.)

The panel resolved the issue regarding potential offsets to Neal when it determined that Clark owed a credit to Neal if it recovered additional amounts from the County's litigation against HOK. Specifically, the panel ruled, "Neal will be entitled to a credit in an unknown amount against the amount awarded in this matter, or payment by Clark if the award has been satisfied, if Clark receives proceeds from the lawsuit against HOK arising out of damages suffered by Clark's subcontractors, including Neal." Because the County's lawsuit against HOK was still pending at the time of the hearing, it was unclear how much the credit would be. The panel therefore reasonably concluded that it was unable to determine the amount to which Neal was entitled from the pending litigation. To determine Neal's share of a potential recovery, the panel would have needed to determine HOK's liability to the

15

County, the resulting damages the County would be awarded, and then figure out Clark's net recovery, minus costs, before it could award Neal a share of that recovery. These issues were never presented to the panel. As the panel stated, "the specific claims asserted in the lawsuit against HOK were not explored during the hearing of this matter . . . ."

In its reply brief, Neal suggests that it was "unnecessary for the panel to provide Neal a liquidated sum," and that the panel instead "could have adopted a formula for future recovery, awarded a sum certain, stayed the matter, or reserved jurisdiction to issue a subsequent award." But Neal does not explain what it means by a "liquidated sum" versus a "sum certain," or how the panel could have reliably calculated either of those or a "formula for future recovery." Moreover, where the County's litigation against HOK could potentially have lasted several years, it was well within the panel's discretion to "decline[ ] to hold this proceeding in abeyance or retain jurisdiction." Having considered the various remedies, the panel gave the parties the option "to reappoint the members of the [p]anel" if any "future disputes aris[e] out of the distribution of any proceeds of the lawsuit against HOK." The panel acted within its authority where its "discretion to determine the extent of remedies is as great as [its] discretion to determine the related question of what issues are necessary to the decision." (*Advanced Micro Devices*, *supra*, 9 Cal.4th at pp. 372, 374–375 ["Were courts to reevaluate independently the merits of a particular remedy, the parties' contractual expectation of a decision according to the arbitrators' best judgment would be defeated."].)

Finally, Neal relies on cases that do not support reversal of the court's judgment. (See *Ulene v. Murray Millman of California, Inc.* (1959) 175 Cal.App.2d 655, 662 [affirming the court's denial of motion to vacate an

16

arbitration award after holding "[t]here is no merit" to appellant's contentions "that the alternative which the award gave [appellant] was vague and indefinite, [and] that it did not finally decide the issue before the arbitrator"]; *Safeway Stores, Inc. v. Brotherhood of Teamsters* (1978) 83 Cal.App.3d 430, 439 [reversing the court's decision vacating an arbitration award and holding that "mere ambiguity in the opinion accompanying an award, which permits the inference that the arbitrator may have exceeded his authority, is not a reason for refusing to enforce the award"]; *Rodrigues v. Keller* (1980) 113 Cal.App.3d 838, 842 (*Rodrigues*) [affirming court's dismissal of action to set aside arbitration award where "the record does not demonstrate that any issue was submitted to the arbitrator which he totally failed to consider"].)

In *Banks v. Milwaukee Ins. Co.* (1966) 247 Cal.App.2d 34, 39 the arbitrator submitted a declaration to the court admitting " 'through inadvertence, mistake and/or excusible [sic] neglect' " he had " 'omitted an award for general damages.' " Based on the arbitrator's declaration, the Court of Appeal determined that "the issue of general damages had been submitted to the arbitrator, and that he had totally failed to consider it." (*Id.* at p. 38.) Here, by contrast, the panel did not fail to consider the issue, but evaluated it and determined the amount of any future recovery from the pending litigation was "unknown." Similarly, in *M.B. Zaninovich, Inc. v. Teamster Farmworker Local Union 946* (1978) 86 Cal.App.3d 410, 415 the arbitration award was vacated where it was "fatally uncertain" because it failed to state the amount of the award. There, in contrast to here, the Court of Appeal determined the arbitrator could calculate the amount of the award but failed to do so. (*Id.* at p. 413 & fn. 1 [noting that "amount of the dues cannot be established without additional information which is not present in

17

the award" and that "the information is in the possession of the [appellant]" but that "does not cure an uncertainty in the award or in a judgment, as the law does not require a party to make a computation in order to render the judgment certain"].) Here, by contrast, the panel determined it was unable to calculate a potential award based on the uncertain outcome of pending litigation.

Because the outcome of the pending litigation was unknown, the panel reasonably refused to attempt to calculate the amount of a potential credit for Neal. (See *Morris v. Zuckerman* (1968) 69 Cal.2d 686, 690 ["It is for the arbitrators to determine which issues were actually 'necessary' to the ultimate decision."]; *East San Bernardino County Water Dist. v. City of San Bernardino* (1973) 33 Cal.App.3d 942, 954 ["The arbitrators, not the courts, have the task of defining the issues between the parties."].) Because Neal failed to meet its "burden of proving" that "all issues submitted for decision have [not] been passed on and resolved" (*Rodrigues*, *supra,* 113 Cal.App.3d at p. 842), the trial court was correct to confirm the award.

DISPOSITION

The judgment is affirmed.[5]  Clark shall recover its costs on appeal.


CASTILLO, J.

WE CONCUR:


BUCHANAN, Acting P. J.



RUBIN, J.

---

[5]    Clark asks us to take judicial notice of two documents entered in the lawsuit between the County and HOK.  We deny the request as those items are not necessary to the resolution of this appeal.  (See *Mangini v. R.J. Reynolds Tobacco Co.* (1994) 7 Cal.4th 1057, 1063; *County of San Diego v. State of California* (2008) 164 Cal.App.4th 580, 613, fn. 29.)